ROBBINS *v.* SHELBY COUNTY TAXING DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

Submitted January 8, 1886. — Argued November 5, 1886. — Decided March 7, 1887.

Chapter 96, § 16, Stats. Tennessee, 1881, enacting that "all drummers and all persons not having a regular licensed house of business in the Taxing District ' of Shelby County,' offering for sale, or selling goods, wares, or merchandise therein by sample, shall be required to pay to the county trustee, the sum of $10 per week, or $25 per month for such privilege," applies to persons soliciting the sale of goods on behalf of individuals or firms doing business in another state; and, so far as it applies to them, it is a regulation of commerce among the states, and violates the provision of the Constitution of the United States which grants to Congress the power to make such regulations.

Interstate commerce cannot be taxed at all by a state, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state.

The power granted to Congress, to regulate commerce among the states, being exclusive when the subjects are national in their character, or admit only of one uniform system of regulation, the failure of Congress to exercise that power in any case, is an expression of its will that the subject shall be left free from restrictions or impositions upon it by the several states.

A state may enact laws which in practice operate to affect commerce among the states — as by providing in the legitimate exercise of its police power and general jurisdiction, for the security and comfort of persons and the protection of property; by establishing and regulating channels for commercial facilities; by the passage of inspection laws and laws to restrict the sale of articles injurious to health and morals; by the imposition of taxes upon avocations within its borders not interfering with foreign or interstate commerce or employment, or with business exer-

cised under authority of the Constitution of the United States; and in other ways indicated in the opinion of the court, subject in all cases to the limitations therein defined: but the statute of the State of Tennessee, considered in this opinion, is not such a law.

THIS was an information in a state court of Tennessee, against the plaintiff in error, for doing business in the Taxing District of Shelby County in that state, as a drummer on behalf of a firm doing business in Cincinnati, Ohio, without a license as required by the provision of the statute of Tennessee, which is set out in the opinion of the court. The defendant was found guilty, and this judgment was affirmed by the Supreme Court of the state on appeal. 13 Lea, 303. The defendant sued out this writ of error. The cause was submitted at the last term of court. The court, on the 8th of March, 1886, ordered it argued; and argument was heard accordingly at this term. The case is stated in the opinion of the court.

*Mr. Luke E. Wright* for plaintiff in error. *Mr. F. T. Edmondson* was with him on the brief.

*Mr. S. P. Walker* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case originated in the following manner: Sabine Robbins, the plaintiff in error, in February, 1884, was engaged at the city of Memphis, in the State of Tennessee, in soliciting the sales of goods for the firm of Rose, Robbins & Co., of Cincinnati, in the State of Ohio, dealers in paper, and other articles of stationery, and exhibited samples for the purpose of effecting such sales, — an employment usually denominated as that of a "drummer." There was in force at that time a statute of Tennessee, relating to the subject of taxation in the Taxing Districts of the state, applicable, however, only to the Taxing Districts of Shelby County, (formerly the city of Memphis,) by which it was enacted, amongst other things, that " All drummers, and all persons not having a regular licensed house of business in the Taxing District, offering for sale or

selling goods, wares, or merchandise therein, by sample, shall be required to pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege, and no license shall be issued for a longer period than three months." Stats. Tennessee, 1881, c. 96, § 16.

The business of selling by sample and nearly sixty other occupations had been by law declared to be privileges, and were taxed as such, and it was made a misdemeanor, punishable by a fine of not less than five, nor more than fifty dollars, to exercise any of such occupations without having first paid the tax or obtained the license required therefor.

Under this law, Robbins, who had not paid the tax nor taken a license, was prosecuted, convicted and sentenced to pay a fine of ten dollars, together with the state and county tax, and costs; and on appeal to the Supreme Court of the state, the judgment was affirmed. This writ of error is brought to review the judgment of the Supreme Court, on the ground that the law imposing the tax was repugnant to that clause of the Constitution of the United States which declares that Congress shall have power to regulate commerce among the several states.

On the trial of the cause in the inferior court, a jury being waived, the following agreed statement of facts was submitted to the court, to wit:

"Sabine Robbins is a citizen and resident of Cincinnati, Ohio, and on the — day of ——, 1884, was engaged in the business of drumming in the Taxing District of Shelby County, Tenn.; *i.e.*, soliciting trade by the use of samples for the house or firm for which he worked as a drummer, said firm being the firm of 'Rose, Robbins & Co.,' doing business in Cincinnati, and all the members of said firm being citizens and residents of Cincinnati, Ohio. While engaged in the act of drumming for said firm, and for the claimed offence of not having taken out the required license for doing said business, the defendant, Sabine Robbins, was arrested by one of the Memphis or Taxing District police force and carried before the Hon. D. P. Hadden, president of the Taxing District, and fined for the offence of drumming without a license. It is

admitted the firm of 'Rose, Robbins & Co.' are engaged in the selling of paper, writing materials, and such articles as are used in the book stores of the Taxing District of Shelby County, and that it was a line of such articles for the sale of which the said defendant herein was drumming at the time of his arrest."

This was all the evidence, and thereupon the court rendered judgment against the defendant, to which he excepted, and a bill of exceptions was taken.

The principal question argued before the Supreme Court of Tennessee was, as to the constitutionality of the act which imposed the tax on drummers; and the court decided that it was constitutional and valid.

That is the question before us, and it is one of great importance to the people of the United States, both as it respects their business interests and their constitutional rights. It is presented in a nutshell, and does not, at this day, require for its solution any great elaboration of argument or review of authorities. Certain principles have been already established by the decisions of this court which will conduct us to a satisfactory decision. Among those principles are the following:

1. The Constitution of the United States having given to Congress the power to regulate commerce, not only with foreign nations, but among the several states, that power is necessarily exclusive whenever the subjects of it are national in their character, or admit only of one uniform system, or plan of regulation. This was decided in the case of *Cooley* v. *Board of Wardens of the Port of Philadelphia*, 12 How. 299, 319, and was virtually involved in the case of *Gibbons* v. *Ogden*, 9 Wheat. 1, and has been confirmed in many subsequent cases, amongst others, in *Brown* v. *Maryland*, 12 Wheat. 419; *The Passenger Cases*, 7 How. 283; *Crandall* v. *Nevada*, 6 Wall. 35, 42; *Ward* v. *Maryland*, 12 Wall. 418, 430; *State Freight Tax Cases*, 15 Wall. 232, 279; *Henderson* v. *Mayor of New York*, 92 U. S. 259, 272; *Railroad Co.* v. *Husen*, 95 U. S. 465, 469; *Mobile* v. *Kimball*, 102 U. S. 691, 697; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 203; *Wabash, &c., Railway Co.* v. *Illinois*, 118 U. S. 557.

2. Another established doctrine of this court is, that where the power of Congress to regulate is exclusive the failure of Congress to make express regulations indicates its will that the subject shall be left free from any restrictions or impositions; and any regulation of the subject by the states, except in matters of local concern only, as hereafter mentioned, is repugnant to such freedom. This was held by Mr. Justice Johnson in *Gibbons* v. *Ogden,* 9 Wheat. 1, 222, by Mr. Justice Grier in the *Passenger Cases,* 7 How. 283, 462, and has been affirmed in subsequent cases. *State Freight Tax Cases,* 15 Wall. 232, 279; *Railroad Co.* v. *Husen,* 95 U. S. 465, 469; *Welton* v. *Missouri,* 91 U. S. 275, 282; *Mobile* v. *Kimball,* 102 U. S. 691, 697; *Brown* v. *Houston,* 114 U. S. 622, 631; *Walling* v. *Michigan,* 116 U. S. 446, 455; *Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34; *Wabash, &c., Railway Co.* v. *Illinois,* 118 U. S. 557.

3. It is also an established principle, as already indicated, that the only way in which commerce between the states can be legitimately affected by state laws, is when, by virtue of its police power, and its jurisdiction over persons and property within its limits, a state provides for the security of the lives, limbs, health, and comfort of persons and the protection of property; or when it does those things which may otherwise incidentally affect commerce, such as the establishment and regulation of highways, canals, railroads, wharves, ferries, and other commercial facilities; the passage of inspection laws to secure the due quality and measure of products and commodities; the passage of laws to regulate or restrict the sale of articles deemed injurious to the health or morals of the community; the imposition of taxes upon persons residing within the state or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce or with some other employment or business exercised under authority of the Constitution and laws of the United States; and the imposition of taxes upon all property within the state, mingled with and forming part of the great mass of property therein. But in making such internal regulations a state cannot impose taxes upon persons

passing through the state, or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce; nor can it impose such taxes upon property imported into the state from abroad, or from another state, and not yet become part of the common mass of property therein; and no discrimination can be made, by any such regulations, adversely to the persons or property of other states; and no regulations can be made directly affecting interstate commerce. Any taxation or regulation of the latter character would be an unauthorized interference with the power given to Congress over the subject.

For authorities on this last head it is only necessary to refer to those already cited.

In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject.

In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and inquire whether it is competent for a state to levy a tax or impose any other restriction upon the citizens or inhabitants of other states, for selling or seeking to sell their goods in such state before they are introduced therein. Do not such restrictions affect the very foundation of interstate trade? How is a manufacturer, or a merchant, of one state, to sell his goods in another state, without, in some way, obtaining orders therefor? Must he be compelled to send them at a venture, without knowing whether there is any demand for them? This may, undoubtedly, be safely done with regard to some products for which there is always a market and a demand, or where the course of trade has established a general and unlimited demand. A raiser of farm produce in New Jersey or Connecticut, or a manufacturer of leather or wooden ware, may, perhaps, safely take his goods to the city of New York and be sure of finding a stable and reliable market for them. But there are hundreds, perhaps thousands, of

articles which no person would think of exporting to another state without first procuring an order for them. It is true, a merchant or manufacturer in one state may erect or hire a warehouse or store in another state, in which to place his goods, and await the chances of being able to sell them. But this would require a warehouse or a store in every state with which he might desire to trade. Surely, he cannot be compelled to take this inconvenient and expensive course. In certain branches of business, it may be adopted with advantage. Many manufacturers do open houses or places of business in other states than those in which they reside, and send their goods there to be kept on sale. But this is a matter of convenience, and not of compulsion, and would neither suit the convenience nor be within the ability of many others engaged in the same kind of business, and would be entirely unsuited to many branches of business. In these cases, then, what shall the merchant or manufacturer do, who wishes to sell his goods in other states? Must he sit still in his factory or warehouse, and wait for the people of those states to come to him? This would be a silly and ruinous proceeding.

The only other way, and the one, perhaps, which most extensively prevails, is to obtain orders from persons residing or doing business in those other states. But how is the merchant or manufacturer to secure such orders? If he may be taxed by such states for doing so, who shall limit the tax? It may amount to prohibition. To say that such a tax is not a burden upon interstate commerce, is to speak at least unadvisedly and without due attention to the truth of things.

It may be suggested that the merchant or manufacturer has the post-office at his command, and may solicit orders through the mails. We do not suppose, however, that any one would seriously contend that this is the only way in which his business can be transacted without being amenable to exactions on the part of the State. Besides, why could not the State to which his letters might be sent, tax him for soliciting orders in this way, as well as in any other way?

The truth is, that, in numberless instances, the most feasible, if not the only practicable, way for the merchant or manufac-

turer to obtain orders in other states is to obtain them by personal application, either by himself, or by some one employed by him for that purpose; and in many branches of business he must necessarily exhibit samples for the purpose of determining the kind and quality of the goods he proposes to sell, or which the other party desires to purchase. But the right of taxation, if it exists at all, is not confined to selling by sample. It embraces every act of sale, whether by word of mouth only, or by the exhibition of samples. If the right exists, any New York or Chicago merchant visiting New Orleans or Jacksonville, for pleasure or for his health, and casually taking an order for goods to be 'sent' from his warehouse, could be made liable to pay a tax for so doing, or be convicted of a misdemeanor for not having taken out a license. The right to tax would apply equally as well to the principal as to his agent, and to a single act of sale as to a hundred acts.

But it will be said that a denial of this power of taxation will interfere with the right of the state to tax business pursuits and callings carried on within its limits, and its rights to require licenses for carrying on those which are declared to be privileges. This may be true to a certain extent; but only in those cases in which the states themselves, as well as individual citizens, are subject to the restraints of the higher law of the Constitution. And this interference will be very limited in its operation. It will only prevent the levy of a tax, or the requirement of a license, for making negotiations in the conduct of interstate commerce; and it may well be asked where the state gets authority for imposing burdens on that branch of business any more than for imposing a tax on the business of importing from foreign countries, or even on that of postmaster or United States marshal. The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce? It seems to be forgotten, in argument, that the people of this country are citizens of the United States, as well as of the individual states, and that they have some rights

under the Constitution and laws of the former independent of the latter, and free from any interference or restraint from them.

To deny to the state the power to lay the tax, or require the license in question, will not, in any perceptible degree, diminish its resources or its just power of taxation. It is very true, that if the goods when sold were in the state, and part of its general mass of property, they would be liable to taxation; but when brought into the state in consequence of the sale they will be equally liable; so that, in the end, the state will derive just as much revenue from them as if they were there before the sale. As soon as the goods are in the state and become part of its general mass of property, they will become liable to be taxed in the same manner as other property of similar character, as was distinctly held by this court in the case of *Brown* v. *Houston,* 114 U. S. 622. When goods are sent from one state to another for sale, or, in consequence of a sale, they become part of its general property, and amenable to its laws; provided that no discrimination be made against them *as* goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way, as other goods are. *Brown* v. *Houston, qua supra; Machine Co.* v. *Gage,* 100 U. S. 676. But to tax the sale of such goods, or the offer to sell them, before they are brought into the state, is a very different thing, and seems to us clearly a tax on interstate commerce itself.

It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers — those of Tennessee and those of other states; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. This was decided in the case of *The State Freight Tax,* 15 Wall. 232. The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce.

A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because, in the one case, it is an act of foreign, and, in the other, of interstate commerce, both of which are subject to regulation by Congress alone.

It would not be difficult, however, to show that the tax authorized by the State of Tennessee in the present case is discriminative against the merchants and manufacturers of other states. They can only sell their goods in Memphis by the employment of drummers and by means of samples; whilst the merchants and manufacturers of Memphis, having regular licensed houses of business there, have no occasion for such agents, and, if they had, they are not subject to any tax erefor. They are taxed for their licensed houses, it is true; but so, it is presumable, are the merchants and manufacturers of other states in the places where they reside; and the tax on drummers operates greatly to their disadvantage in comparison with the merchants and manufacturers of Memphis. And such was undoubtedly one of its objects. This kind of taxation is usually imposed at the instance and solicitation of domestic dealers, as a means of protecting them from foreign competition. And in many cases there may be some reason in their desire for such protection. But this shows in a still stronger light the unconstitutionality of the tax. It shows that it not only operates as a restriction upon interstate commerce, but that it is intended to have that effect as one of its principal objects. And if a state can, in this way, impose restrictions upon interstate commerce for the benefit and protection of its own citizens, we are brought back to the condition of things which existed before the adoption of the Constitution, and which was one of the principal causes that led to it.

If the selling of goods by sample and the employment of drummers for that purpose, injuriously affect the local interest of the states, Congress, if applied to, will undoubtedly make such reasonable regulations as the case may demand. And Congress alone can do it; for it is obvious that such regulations should be based on a uniform system applicable to the whole country, and not left to the varied, discordant, or retaliatory enactments of forty different states. The confusion into which

the commerce of the country would be thrown by being subject to state legislation on this subject, would be but a repetition of the disorder which prevailed under the Articles of Confederation.

To say that the tax, if invalid as against drummers from other states, operates as a discrimination against the drummers of Tennessee, against whom it is conceded to be valid, is no argument; because, the state is not bound to tax its own drummers ; and if it does so whilst having no power to tax those of other states, it acts of its own free will, and is itself the author of such discrimination. As before said, the state may tax its own internal commerce ; but that does not give it any right to tax interstate commerce.

*The judgment of the Supreme Court of Tennessee is reversed, and the plaintiff in error must be discharged.*

Mr. Chief Justice Waite, with whom concurred Mr. Justice Field and Mr. Justice Gray, dissenting.

I am unable to agree to this judgment. The case, as I understand it, is this :

In January, 1879, the State of Tennessee abolished the charter of the city of Memphis and created the Taxing District of Shelby County as its successor. By a statute passed April 4, 1881, to provide means for the support of the Taxing District, it was, among other things, enacted " that all drummers and all persons not having a licensed house of business in the Taxing District, offering for sale or selling goods, wares, or merchandise therein by sample, shall be required to pay to the county trustees the sum of $10 per week, or $25 per month, for such privilege, and no license shall be issued for a longer period than three months."

Sabine Robbins, a citizen of Ohio, employed by the firm of Rose, Robbins & Co., also citizens of Ohio, engaged in business as merchants at the city of Cincinnati, in that state, has been convicted of a violation of this statute because he solicited trade for his firm in the Taxing District, by the use of samples, without a license. This it is now decided was wrong because

the statute under which the conviction was had, in so far as it applies to the business in which Robbins was engaged, is a regulation of interstate commerce, and, therefore, repugnant to the commerce clause of the Constitution of the United States. To this I cannot give my assent.

The license fee is demanded for the privilege of selling goods by sample within the Taxing District. The fee is exacted from all alike who do that kind of business, unless they have " a licensed house of business " in 'the district. There is no' discrimination between citizens of the state and citizens of other states. The tax is upon the business, and this I have always understood to be lawful, whether the business was carried on by a citizen of the state under whose authority the exaction was made, or a citizen of another state, unless there was discrimination against citizens of other states. In *Osborne* v. *Mobile*, 16 Wall. 481, it is said " the whole court agreed that a tax on business carried on within the state, and without discrimination between its citizens and the citizens of other states, might be constitutionally imposed and collected." And I cannot believe that if Robbins had opened an office for his business within the Taxing District, at which he kept and exhibited his samples, it would be held that he would not be liable to the tax, and this whether he stayed there all the time or came only at intervals. But what can be the difference in principle, so far as this question is concerned, whether he takes a room permanently in a business block of the district where, when he comes, he sends his boxes and exhibits his wares, or engages a room temporarily at a hotel or private house and carries on his business there during his stay ? Or even whether he takes his sample boxes around with him to his different customers and shows his wares from them ? In either case he goes to the district to ply his trade and make his sales from the goods he exhibits. He does not sell those goods, but he sells others like them. It is true that his business was to solicit orders for his principals, but in doing so he bargained for them, carried on business for them in the district by means of the samples of their goods, which had been furnished him for that purpose. To all intents and purposes he had his goods with him for sale,

for what he sold was like what he exhibited as the subjects of sale. . I am unable to see any difference in principle between a tax on a seller by sample and a tax on a peddler, and yet I can hardly believe it would be contended that the provision of the same statute now in question, which fixes a license fee for all peddlers in the district, would be held to be unconstitutional in its application to peddlers who came with their goods from another state and expected to go back again.

As the law is valid so far as the inhabitants of the state are concerned, no inhabitant can engage in this business unless he pays the tax. If citizens of other states cannot be taxed in the same way for the same business, there will be discrimination against the inhabitants of Tennessee and in favor of those of other states. This could never have been intended by the legislature, and I cannot believe the Constitution of the United States makes such a thing necessary. The Constitution gives the citizens of each state all the privileges and immunities of citizens in the several states, but this certainly does not guarantee to those who are doing business in states other than their own immunities from taxation on that business to which citizens of the state where the business is carried on are subjected.

This case shows the need of such authority in the states. This Taxing District is situated on the western boundary of Tennessee. To get into another state it is only necessary to cross the Mississippi River to Arkansas. It may be said to be an historical fact that the charter of Memphis was abolished and the Taxing District established because of the oppressive debt of Memphis, and the records of this court furnish abundant evidence of the heavy taxation to which property and business within the limits of both the old corporation and the new have been for many years necessarily subjected. Merchants in Tennessee are by law required to pay taxes on the amount of their stocks on hand and a privilege tax besides. Under these circumstances it is easy to see that if a merchant from another state could carry on a business in the district by sending his agents there with samples of his goods to secure orders for deliveries from his stock at home, he would enjoy a

privilege of exemption from taxation which the local merchant would not have unless in some form he could be subjected to taxation for what he did in the locality. The same would be true in respect to all inhabitants of the state who were sellers by sample in this district, but who had no place of business there. And so they, like citizens of other states, were required to pay for the privilege. Thus all were treated alike, whether they were citizens of Tennessee or of some other state, and under these circumstances I can see no constitutional objection to such a taxation of citizens of the other states for their business in the district.

I have treated the case as a conviction of a " drummer " for selling goods by sample. That is what Robbins was found guilty of, and that is what this statute makes an offence. The license is only required of " drummers and all persons not having a licensed house of business in the Taxing District, offering for sale or selling goods, wares, or merchandise therein by sample." The Supreme Court of Tennessee decided that this means nothing more than that any person who sells by sample shall pay the tax, and to that I agree. It will be time enough to consider whether a non-resident can be taxed for merely soliciting orders without having samples when such a case arises. That is not this case.

Mr. Justice Field and Mr. Justice Gray concur in this dissent.