Mr. Justice Hagner
delivered the opinion of the Court;
It is insisted first upon the part of the petitioner that he *348 is not amenable to the penalty prescribed by the Act of the Legislative Assembly of this District, because he cannot properly be considered a peddler within the correct meaning of the term. We have been referred to several definitions as given in dictionaries of authority to support the contention that the word necessarily signifies an itinerant dealer in a variety of petty wares and articles, which he buys and sells again to make a profit for himself. And it is urged that as Wilson derived no profit by way of percentage or otherwise from the sale of the individual parcels of soapine, but was paid only by a salary for. his labor, he is not within the meaning of the law. But we think the fact that the seller was paid in this form rather than by a special profit on each individual parcel as sold, cannot exempt him from the category of a peddler, if he is otherwise within the intent of the act. If such were to be the result, a merchant might send any number of persons through a city or State, disposing of goods precisely as peddlers do in every other respect, but paying them by salary or wages not regulated by the profits upon the particular sales, and thus escape the operation of the license tax charged to persons who are otherwise no more peddlers than such agents would be. In the language of the Supreme Court in Brown vs. State of Maryland, 12 Wheat., 444: “It is impossible to conceal from ourselves that this is a varying of the form without varying the substance. It is treating a prohibition which is general as if it were confined to a particular mode of doing the forbidden tiling.” Nor does the fact that the petitioner was selling the goods of another, which he himself had never purchased for sale, exempt him from the operation of the act. These points are expressly decided in the case of Commonwealth of Pennsylvania vs. Gardner, 133 Penn., 285, to which we shall hereafter more particularly refer. In the act before us, the Legislative Assembly distinctly described the class of persons they intended to include in the designation of “ peddlers,” and *349 if this person was ottering for sale, from house to house, the-parcels of soapiue, and delivering them at the time of sale,, lie came within that description.
We have no doubt the Legislative Assembly had the-power to pass such license acts. Its general power to do solías been effectively recognized by Congress in laws amending or modifying them from time to time, and particular parts of them have been repeatedly sustained by our courts. Cooper’s Case, MacArthnr & Mackey, 250; District vs. Oyster, 4 Mackey, 285; District vs. Waggaman, Id., 328. In another case, this court held a particular provision of the license act void. Hennick vs. Stoutenburgh, 5. Mackey, 490. But the provision theii under consideration, exacted a license tax from commercial agents, who by Clause 3 of Sec. 24 of Chap. 69 of the License Act of August 1871, as amended by Chap. 49, of the Act of 1872, were taxed as follows:
“ Commercial agents shall pay two hundred dollars annually. Every person whose business it is, as agents, to offer for sale goods, wares, or merchandise by samples, catalogue or otherwise, shall be regarded as a commercial agent.” Of course this only applied to persons who “offer for sale,” whether the offer was made “ by samples or by catalogues or otherwise,” and had no reference to those who sell and deliver the goods at the time of the sale. Such persons are known as drummers who solicit orders, by exhibiting samples, or by a catalogue, or in any oilier way, and not those who actually sell and deliver the goods at the time, as peddlers do and as Wilson was doing. The general power of the Legislative Assembly to pass suc-h acts was also recognized by the Supreme Court in Welsh vs. Cooke, 7 Otto, 542. Indeed, it seems impossible to question it, unless we are prepared to deny to the District the ordinary powers of a municipality, absolutely indispensiblo in a city circumstanced like-this. That the Legislative Assembly may in some other-instances have exceeded its jmst authority in passing particular enactments under- the general-, powier- may perhaps; *350 be true, but we are speaking of its general power to enact acts requiring traders and others to take out licenses, and this we have never heard seriously questioned.
A competent legislative authority has the right to place offenders in a recognized category and to punish persons not previously so classed. Thus Congress denounced persons engaged in the slave trade as guilty of piracy, although that offense had never before been embraced within the definition of piracy, and slavetraders thereafter became punishable as pirates, and prosecutions have repeatedly been had under that law.
Congress in Sec. 3244, Subsec. 11, R. S., 625, describes “ peddlers of tobacco” as follows:
“Any person who sells or offers to sell manufactured tobacco, snuff' or cigars, travelling from place to place, in the town or in the country, shall be regarded as a peddler of tobacco.” If this statute had simply imposed a license tax upon the occupation of a “peddler in tobacco,” it would be proper to have recourse to the signification of the word at the time the law was passed, to ascertain whether the person charged was comprehended within the general epithet. But when the legislature saw fit to declare that a person who commits certain enumerated acts shall be-considered a peddler and treated as such, it is too late to resort to glossaries to ascertain whether the legislature observed the dictionary definition of the occupation, according to antecedent usage or strict etymological rules. The legislative definition outweighs the dictum of the lexicographers-
We might refer to numerous cases where the courts have held that the word “peddler” in a statute comprehended persons whose acts were less within the strict limits insisted on by the petitioner’s counsel, than they- are as used in the ordinance before us. Thus in State vs. Wilson, 2 Lea, 28, venders of lightning rods were held to be included in an act requiring a peddler of merchandise to obtain a license. In Chicago vs. Bate, 100 Ill., 61, a city ordinance prohibited *351 persons from selling milk from wagons without license. The only authority in the charter of the city relied on for the enactment of the ordinance, was a provision that the municipality might tax, regulate, suppress and prohibit hawkers and peddlers. But the court held the word peddler was used in the charter in an unrestricted sense, and authorized the city to exact a license from persons who sold milk, and that it made no difference that the accused had regular customers whom he supplied daily.
In Borough of Warren vs. Geer, 117 Pa., 207, the court hold that a provision in the charter authorizing the borough to require a license for peddling market produce and other articles, included sales of books ; and that a book canvasser was properly convicted under a borough ordinance for acting -without a peddler’s license; and that there was nothing unreasonable in this requirement.
Although there are many cases where the courts have held a general expression in a statute included persons further removed from the usual definition of such expression than the petitioner was from the supposed dictionary signification of the word “ peddler,” we have found no case where the courts have denied to the legislature the right to define for itself the characteristics that thereafter should constitute an offense, not-previously within such definition.
We must regard the petitioner as a peddler within the meaning of the Act of the Legislative Assembly; and that he is punishable as such for selling without a license unless lie is exempt upon the other ground of defense urged in his behalf.
That defense is that the Act of the Legislative Assembly is void, as being repugnant to the third clause of the Eighth Section of the First Article of the Constitution, which declares that “ Congress shall have power to regulate commerce with foreign nations, among the several States, and with Indian tribes.” This involves the consideration of a very important and interesting question which has repeatedly *352 challenged the attention of the Supreme Court. In one of the first of these great cases, Brown vs. State of Maryland, 12 Wheat., 436, the Supreme Court decided that a State statute requiring an importer of foreign commodities to take out a State license, was repugnant to the constitutional provision referred to, as well as to another provision of the Constitution ; and that the conviction of an importer for having sold a- package of foreign dry goods without such license was illegal.
In defining the line of demarcation between the exclusive power of the Government to tax foreign goods imported into a State, and the power of the State to levy such tax after they have reached the State’s jurisdiction, Chief Justice Marshall in that case laid down a rule which is thus stated by the Supreme Court in the subsequent caso of Welton vs. Missouri, 91 U. S., 281:
"There is a difficulty, it is true, in all cases of this character, in drawing the line precisely where the commercial power of Congress ends and the power of the State begins. A similar difficulty was felt by this court in Brown vs. Maryland, in drawing the line of distinction between the restriction upon the power of the States to lay a duty upon imports, and their acknowledged power to tax persons and property; but the court observed that the two, though quite distinguishable when they do not approach each other, may yet like the intervening colors between white and black, approach so nearty as to perplex the understanding, as colors perplex the vision in marking the distinction between them ; but that, as the distinction exists it must be marked as the cases arise; and the court, after observing that it might be premature to state any rule as being universal in its application, held, that when the importer had so acted upon the thing imported that it had become incorporated and mixed up in the mass of property in the country, it had lost its distinctive character as an import, and became subject to the taxing power of the State;' but that while *353 remaining the property of the importer in his warehouses in the original form and package in which it was imported, the tax upon it was plainly a duty on imports prohibited by the Constitution.”
This definition has been adopted substantially, if not in exact words, in each of the important cases on the subject since that time.
Robbins vs. Shelby Trading District, 129 U. S., 490; Corse vs. Meigs, 130 U. S., 502; Brown vs. Houston, 114 U. S., 632; Lelap vs. Mobile Telegraph, 127 U. S., 646; Arthur vs. Texas, 128 U. S., 130 ; Stoutenburgh vs. Hennick, commercial agent, 129 U. S., 142; Liesy vs. Hardin, 135 U. S., 100.
The question therefore in the present case is, whether the boxes of soapine which Wilson is said to have purchased from the Washington merchant aud subsequently sold from door to door by retail, can be considered as continuing the property of the person who imported them into the District of Columbia, at the time of Wilson’s purchase, remaining in the original form and package in which they were imported ; or whether the person who so imported them into the District, before Wilson’s purchase, “had so acted upon the thing imported that it had become incorporated and mixed up with the mass of property in the county [District], as to have lost its distinctive character as an import?” If the facts support the first supposition, the tax was illegal; if they support the latter “ the goods had become subject to the taxing power of the State [District].”
Upon the statement presented by the petitioner, to -which the counsel for the District have assented for the purposes of this argument, it does not clearly appear whether we are to understand the particular boxes so sold as having been imported by the petitioner Wilson or by the Washington merchant.
The statement in one place says “ the box sold at retail from door to door by the agent never passes into the hands *354 of the dealers, but is sent to the agent direct from the manufactory, and is sold by him for the Kendall Manufacturing-Company, and the proceeds paid to them.” This would seem to indicate that the petitioner is to be considered as the importer of those boxes. On the other hand, the statement avers that the practice of the petitioner, as agent of the companj'-, is “ to sell a certain number of boxes, at wholesale prices, to the Washington dealers — therefrom to retain one box from each wholesale purchaser, paying him the retail prices therefor by discount on his bill; the purchaser being charged with six boxes and credited with one in his bill, and then to sell this box at retail from door to door for the purpose of advertising the article, stimulating its sales, and thereby obtaining customers for the grocers and dealers,” which would certainly imply that the dealer must import the particular box in his original package before it can be. retained from the six boxes that had been sold to him and charged on his bill at the wholesale prices, and afterwards credited to him at the retail prices to be sold on the streets to obtain customers for the dealers.
If the former supposition is to be taken as correct, of course the agent must receive his assortment of individual boxes in a package together, as it is ridiculous-to assume he would receive each box separately, as a specific shipment to him. On the other hand, if the sixth box reaches the city in the package received by the merchant, that package must be opened before the agent can obtain the sixth box when he buys it at retail price from the merchant.
Hence, in either case, before the agent can take the individual box on the street, the package in which it was imported to the District must have been broken; the article must have “lost its distinctive character as an import,” and become incorporated and mixed up in the mass of property in the District. The singular, circuitous and rather mysterious arrangement by which the merchant is charged with a box which it is said he never bought; is allowed *355 <a retail price for what it is said he never sold; and is credited with the retail price of what never belonged to him, bi^ a person who never sold it to him, cannot change the character of the transaction. Repeating the words of the Chief Justice before quoted from Brown vs. Maryland, It is impossible to conceal from ourselves that this is a varying of the form without a varying of the substance.”
The Supreme Court has contented itself in the different instances where the point arose, with deciding whether under the facts in the particular case, the goods upon which it was sought to impose a tax directly or by the exaction of a license, had at the time been incorporated and mixed up in the mass of the property of the State, and become subject to its taxing power. In Brown vs. Houston, Collector, 114 U. S., 22, it was held that coal mined in Pennsylvania and sent in flat boats to New Orleans, to be sold in open market there on account of the owners in Pennsylvania, when it liad reached its destination and come to its place of rest for final disposition or use, had become a commodity in the market, a part of the general mass of property of the State, and was subject to taxation under its general laws; although after its arrival it was to be - sold from the flat boat, without being landed, and for the purpose of being taken out of the country on a vessel bound to a foreign port. If the property described in that case, under the circumstances, had become so incorporated with the mass of the property in the State'as to be the subject of State taxation, we cannot see why the individual boxes of soapine in the hands of Wilson were not in the same predicament.
We have carefully examined all the decisions of the Supreme Court on this subject, and have found nothing in either of them to interfere with these conclusions. Robbins vs. Shelby Taxing District, 120 U. S., 490; Corson vs. State of Maryland, Id., 502; Asher vs. Texas, 128 U. S., 130; Hennick vs. District of Columbia, 129 U. S., 141, were all *356 cases where the person charged was selling by sample, goods not yet imported into the State or District, and the courts very reasonably declared that the goods sought to be taxed by means of a license, could no more be subjected to a tax by such a sale than they could be if the Sale had been conducted by letter through the post office.
In Welton vs. Missouri, 91 U. S., 282, from which we have already quoted Justice Field’s statement of the definition in Brown vs. Maryland, the court held'that a State law providing that “whoever shall deal in the selling of patent or other medicines, goods, wares, or merchandise, except books, charts and stationery, which are not the growth, produce, or manufacture of the State, by going from place to place to sell the same, is declared to be a peddler,” and exacting a a license tax from such dealers, while making no such requirement where such persons sold only such commodities as were produced within the State, was in conflict with the commercial clause of the Constitution, and void because of this discrimination against citizens of other States. But the court said nothing to imply that the tax would have been illegal if the statute had applied (as ours does) to all citizens alike. Nor does it intimate that the accused could not be held as a peddler, though the definition given in the statute is as open to etymological criticism as the act of the District legislature. A.similar decision was made in Ward vs. Maryland, 12 Wall., 418.
The point of these decisions is emphasized by the opinion in Machine Co. vs. Gage, 100 U. S., 676. The Howe Machine Co., which manufactured its machines in Connecticut, had an agent in Nashville, Tenn., who went to Lawrence County to sell machines, and a tax was there demanded of him for a peddler’s license under a State law which required all peddlers of sewing machines to pay a tax. He denied the validity of the act, but paid the tax to the county clerk, and this suit was brought to recover back the amount so paid. The case was discussed by the court with full exam *357 ination of authorities; and the opinion concludes as follows: “In all cases of this class, to which the one before us belongs, it is a test question whether there is any discrimination in favor of the State, or of the citizens of the State which enaeted the law. Wherever there is such discrimination, it is fatal. In the case before us the statute in question, as construed by the Supreme Court of the State, makes no such discrimination. It applies alike to sewing machines manufactured in the State and out of it. The exaction is not an unusual or unreasonable one. The State, putting all such machines upon the same footing with, respect to'the tax complained of, had an unquestionable right to impose the burden.”
No suggestion was there made that the agent who sold the sewing machines for the foreign ’ manufacturer was not a peddler; and the Supreme Court held he must obtain a peddler’s license.
Shortly afterwards the case of Webber vs. Virginia, 103 U. S., 350, was decided, in which a law of that State was held invalid because of the discrimination against nonresidents which appeared in Welch vs. Missouri, 91 U. S., and was absent in Brown vs. Gage, 100 U. S.
The petitioner’s counsel referred to a decision said to have been rendered in the Hustings Court in Richmond; and also to a case in the Court of Common Pleas, in Delaware County, Pennsylvania, in which they contended the law as they present it was settled on this identical subject.
We have not been able to find the former decision; but we have examined the latter case with care. Larkin and ■others were arrested in the city of Chester for selling soapine without a license, and the Court of Common Pleas held the ordinance void and inapplicable, on two grounds stated in the opinion:
1. Because it was doubtful whether the charter of Chester gave to the city the power to‘pass‘an ordinance to license peddling.
*358 But the District of Columbia, as we have seen, undoubtedly possesses that power.
2. Because the sellers of the soapine were not peddlers within the meaning of the city ordinance.
But that ordinance did not specially describe -the form of sale which should thereafter constitute “peddling.” The act in force in this District does explicitly contain that description.
That case further differs from the case before us, because no such facts as to the sale of the boxes to the merchant, and the repurchase of them by the agent, seem to have existed there; whereas those important circumstances appear in the agreement filed in the present case.
These differences are sufficient to discriminate that case from the present; but at the best it is only the decision of an inferior court, and we think it erroneous; and whatever force it might be supposed to have against the tax in the present case is destroyed by a subsequent decision of the Court of Appeals of that State in March, 1890, in Commonwealth vs. Gardner, 133 Pa., 285, in which all the points raised before us are in turn considered.
The defendants were indicted for hawking and peddling goods within the County of Schuylkill, contrary to the provisions of the Act of April, 1846.
. It appears from the special verdict found by the jury and from the opinion of the court, that the defendants who were in the county temporarily for the purpose of making such sales, sold from door to door within said county parcels-or packages of soapine or washing powder, being a substitute for soap, etc. That they sold the goods as agents of a manufacturing company whose office, works, members, and officers are in Providence, Rhode Island ; that the goods were made there and were sold by defendants on account of the company; that the defendants had no interest in the goods, nor in their proceeds, but were paid a salary for their services by the company. The statute for *359 bids the sale of foreign, or domestic goods, wares,, or merchandise within the county by any person as a hawker or peddler.
The county court entered a verdict of guilty upon the special verdict; and an appeal from this ruling was taken to the Court of Appeals, where the case was elaborately argued by counsel and discussed by the court.
The court decided that the defendants were “ peddlers” within the meaning of the law; “that it was of no consequence if they did not own the articles sold, but acted as the agents of others;” that the prohibition in the law against all peddling in the county was a valid exercise of the police power of the State, and was not in violation of the constitutional right of the citizen secured by the Constitution of the State; that the sale from house to house by agents of goods manufactured in Rhode Island by a company whose members are non-residents of Pennsylvania is not interstate commerce; and that the law forbidding all peddling within the county does not invade the exclusive right of Congress to regulate interstate commerce.
In speaking upon the last point the court says: “The citizen of another State may come into Pennsylvania when he will and where he will, stay as long as he chooses, open as many places for the sale of his goods as he may see fit, and enjoy the same measure of freedom in regard to the conduct of his business as a native citizen. But when he comes within the State, permanently or temporarily, he is under the protection of its laws, and the correlative duty of obedience rests on him. His rights are equal to, but not above, those of the citizen. He has no more right to sell intoxicating drink, without a license, than a citizen; no better right to sell cigarettes to children, or oleomargarine to customers, in violation of law, than a citizen. He has no better right to take a pack on his back, or a horse and cart, and engage in peddling, than a citizen. To hold the contrary would be subversive of law and order, and *360 would render the possession of the police power useless to the State.”
The facts of the case at bar are less favorable to the defendant than those in 133 Pa., inasmuch as the stratagem of the alleged sale by the agent of the one box of soapine to the merchant, and its alleged repurchase did not appear in that case. But if the present case were no worse than that, the decision cited would be a powerful authority' in support of the view we have taken.
The resident merchants here are obliged to pay taxes upon their stock in trade and shops, besides paying a license tax. It is hardly fair that persons without any stake in the community, and who contribute nothing in any other form towards the expenses of the Government here, should be permitted to carry on their traffic without payment of a license tax; which, in the language of the court in Machine Co. vs. Gage, 100 U. S., is “an exaction not unusual or unreasonable.”
The judgment of the Police Court against the treasurer having been correct, the application for a habeas corpus is overruled, and the petitioner remanded into custody.