*Ex parte* BROWN.

*(District Court, E. D. North Carolina.* August 7, 1891.)

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—MERCHANTS' LICENSE TAX.
    Revenue Act N. C. § 22, requiring all merchants to pay "as a license tax one-tenth of one per centum on the total amount of purchases in or out of the state, (except purchases of farm products from the producer,) for cash or on credit," is not a tax on the privilege of purchasing goods, but on the goods themselves, as part of the general mass of property in the state, and does not, in its application to purchases outside the state, operate as an interference with interstate commerce. *Robbins* v. *Taxing Dist.,* 7 Sup. Ct. Rep. 592; *Leisy* v. *Hardin,* 10 Sup. Ct. Rep. 681; and *Fertilizing Co.* v. *Board of Agriculture,* 43 Fed. Rep. 609,—distinguished.

2. SAME—TAX ON IMPORTS.
    Nor does such tax operate as a tax upon imports or exports, within the prohibition of Const. U. S. art. 1, § 10, cl. 2.

3. SAME—DISCRIMINATION.
    The fact that purchases of farm products from the producer are excepted from the tax cannot be said to operate as a discrimination against farmers residing outside the state, merely because it is probable that merchants will buy more products from resident than from non-resident farmers.

At Law. Application by Alexander H. Brown for a writ of *habeas corpus* to release him from imprisonment, because of a failure to comply with the requirements of the revenue act of North Carolina. Heard at chambers. Writ refused.

*George Rountree,* for petitioner.

*Thomas Strange,* for the State.

SEYMOUR, J. This petition for a writ of *habeas corpus* has been presented with the purpose of testing the merchants' license tax of the state of North Carolina. Mr. Strange was, by consent, heard in opposition to the petition in behalf of the state, and the facts set forth therein were admitted, for the purposes of this application, to be true. The material parts of the revenue act are found in section 22 of the act, and are in these words:

"Every merchant, jeweler, grocer, druggist, or other dealer who shall buy and sell goods, wares, and merchandise, of whatsoever description, not specially taxed elsewhere in this act, shall, in addition to his *ad valorem* tax on his stock, pay as a license tax one-tenth of one per centum on the total amount of purchases in or out of the state, (except purchases of farm products from the producer,) for cash or on credit, whether such persons herein mentioned shall purchase as principal or through an agent or commission merchant. Every person mentioned in this section shall, within ten days after the first days of January and July in each year, deliver to the clerk of the board of county commissioners a sworn statement of the amount of his purchases for

the preceding six months. * * * Every merchant or dealer failing to render such list * * * shall be guilty of a misdemeanor. * * *"

Petitioner is a merchant in Wilmington, who is engaged in the business of buying in other states, and bringing into North Carolina, and there selling, large quantities of merchandise, including farm products not purchased from the producer, as well as in the business of buying and selling such articles in North Carolina. Having been so advised by counsel, he has refused to deliver a sworn statement of purchases out of the state, but has delivered to the clerk of the board of county commissioners such a statement of purchases within the state, and paid tax accordingly. Thereupon he has been arrested, and held in custody by the sheriff of his county, on a warrant charging him with a violation of the statute above cited. He claims that his arrest is illegal, and that he is restrained of his liberty in violation of the constitution of the United States. So the question is whether the tax imposed upon merchants of one-tenth of 1 per centum on purchases out of the state is unconstitutional, and, if so, whether petitioner's imprisonment for failing to deliver a sworn statement of such purchases, with a view to the listing of such tax, is in violation of the constitution of the United States. Section 3 of the revenue act imposes an *ad valorem* tax of 25 cents on $100 value of all real and personal property within the state. The tax under discussion is in addition to the *ad valorem* tax, and, in view of the provision of the constitution of North Carolina requiring equal taxation on all real and personal property, would be illegal, but that it is a license tax, and therefore within the authority given to the legislature by article 5, § 3, of that instrument. Besides being a license tax, it is, however, an *ad valorem* tax on property. *Brown* v. *Maryland*, 12 Wheat. 419. As a license tax, it is imposed on a person residing and engaged in business in North Carolina. Considered as a tax on property, it is imposed, or, for the purposes of this proceeding, and under petitioner's application for a writ of *habeas corpus*, must be considered as imposed, on merchandise being, at the time when, under the law, it should have been listed, within the state of North Carolina. The requirement of the statute is that within 10 days after the 30th of last June petitioner should have delivered a sworn statement of his purchases for the 6 months ending on such 30th of June. I do not at all pass upon the question of the possible construction of this provision with respect to whether the statement required does or does not include any merchandise purchased before the last of June, but on that day not yet within the state. If it could be in any way material, no such question is raised by the petitioner. On the contrary, petitioner refuses to deliver any statement of purchases out of the state.

As some stress seems to have been laid upon the phrase used in the description of the tax, it may be well to say, although the proposition seems to be an obvious one, that the words "purchases in or out of the state" do not refer to the act of purchasing, but to the goods purchased. It seems not at all material to the characterization of the tax whether it be laid upon the amount of sales, upon the average amount kept on hand,

or, as is the case here, upon the amount of purchases; in either case, the tax is upon the goods, and it is of no moment whether they be valued by their purchase or sale price, or by some other standard. Either as a license tax imposed upon a resident, or as a property tax laid upon property, within the state, the imposition in section 22 is legal, unless it is in conflict with some one of the provisions of the constitution of the United States. Petitioner claims that it does so conflict with article 1, § 8, cl. 3, which provided that "congress shall have power to regulate commerce with foreign nations, and among the several states;" and with article 1, § 10, cl. 2, which provided that "no state shall * * * lay any imposts or duties on imports or exports."

Before proceeding to the graver question at issue, which involves an important part of the state's powers to raise revenue, I will dispose of a position taken in the outset of his argument by counsel for petitioner, which only attacks the form of the tax, but not the taxing power itself, but which, if decided in his favor, would be fatal to the state's right to ultimately collect the tax *sub lite*, if not decisive of the present application. Section 22 excepts from taxation purchases of farm products from the producer. This, it is claimed, is in reality, although not ostensibly, a discrimination in favor of inhabitants of the state as against non-residents. The argument made is that, by reason of locality, a merchant naturally will buy a much greater quantity of farm products in his own state than out of it. Therefore, it is said the law, being in this respect in its effect more to the advantage of farmers in North Carolina than out of it, discriminates in favor of the former and against the latter. It may be said with equal truth that it discriminates also in favor of farmers within 10 miles of the merchant as against those 100 miles from him, and in the case of petitioner in favor of farmers in Marion county, in South Carolina, as against those in Craven county, North Carolina. But, indeed, I can see no force in the position in any point of view, and no applicability in the authorities cited to sustain it. It is conceded that a law that professes to be non-discriminating, and is so, as far as its words upon its face go, may, when the circumstances are applied to it, be shown to discriminate, and may for that reason be unconstitutional. Such was the fact in the Virginia case of *Brimmer* v. *Rebman*, 138 U. S. 78, 11 Sup. Ct. Rep. 213, and of *Minnesota* v. *Barber*, 136 U. S. 313, 10 Sup. Ct. Rep. 862. Laws professing to be enacted for the purpose of preventing the sale of unwholesome meat, and in one case taxing all dressed meat slaughtered more than 100 miles from the place of sale, and in the other prohibiting the sale of fresh meat from animals not inspected by a Minnesota inspector before being slaughtered, were found to be really laws prohibiting the sale of all such commodities imported from other states, and were held to be violations of the right of interstate commerce. But these were cases of taxation or prohibition. The revenue act of North Carolina contains, on the contrary, only an exemption from taxation. I know of no provision of the constitution violated by the exemption. It does not deprive any farmer in any other state of the privilege of selling his products in North Carolina, or tax him for

the right to do so.   If he is at a disadvantage in so selling by reason of his distance from a market like the one of Wilmington, in that state, it is a disadvantage not caused by any statute, and is doubtless compen-sated by nearness to some market more accessible to him than to his rival in the market of Wilmington, the farmer residing in that locality. Nor does it in any way interfere with commerce.   Only a tax or a prohi-bition could have that effect.

I come to the main point in the case.   The law in question imposes a non-discriminating tax upon all merchandise in North Carolina, with the exception above mentioned, whether the product of that or some other state, whether in the hands of a second purchaser or of the im-porter, and whether it be or not in the condition in which it was im-ported; that is, as it is usually termed, in the original package.   It is contended that, as far as it affects goods brought from another state in the possession of the first purchaser, in an unchanged form, it is uncon-stitutional.   This is not the case of a tax upon a citizen of another state, imposed upon him for the privilege of bringing his merchandise into North Carolina, and there offering it for sale, but a tax upon goods in the state, imposed upon them in common with all other goods.   A mo-ment's consideration will be enough to show that, if it is unconstitu-tional, no tax upon the business of a merchant can be imposed and col-lected in any state.   The great mass of merchants' sales consists either of commodities exclusively brought from outside of the state, and which are not produced within its limits, or of commodities in regard to which the manufactories and farms of the state compete with those of other parts of the world.   If petitioner's contention is sustained, the first class cannot be taxed at all in the hands of the original purchaser.   As for the second, a state has the power to tax such of them as have been in part manufactured or produced in its limits, but not those brought from other states.   The effect, were such a tax imposed, would be protection, to the extent of the tax, to extra-state productions.   Of course no state could afford to impose such a tax.   The result would be that all mer-chants engaged in the exclusive business of selling goods in the original package, wherever purchased, would be exempted from any license tax whatever.   The next result would be that such merchants would drive out of business, to a very great extent, all taxed merchants.   The ulti-mate result would be that no tax on the business of selling commodities would be imposed.   It is true that article 1, § 10, of the constitution forbids duties on imports from foreign countries, and, as interpreted by Chief Justice'MARSHALL in *Brown v. Maryland,* 12 Wheat. 419, prohibits all state taxation of either imported goods in the original packages or of the business of selling such goods; and, without much consideration, it might be thought that the same results as those above stated might flow from the absence of power in the states to tax foreign importations. But the conditions attending the sale of such commodities, and of goods brought into one state from the others, are widely different.   It would be impossible for a merchant dealing only in foreign imports in the orig-inal package to compete in general business with one who kept both for-

eign and domestic articles for sale. He would be limited to a few lines of goods, and, with regard to those, cost of transportation, and, above all, duties on imports, would reduce him to an equality with the merchant buying his goods nearer at home, and paying no tax on importation, if they did not put him at a disadvantage in the cost of his commodities. But the merchant dealing only in goods imported from other states would have a practically unlimited range of untaxed merchandise with which to compete with the taxed merchant dealing in the productions of his own state. There is an additional advantage to those already mentioned, that the dealer in goods brought from other states would have were the courts to hold taxation like that under consideration illegal. If commodities from other states in their original form cannot be taxed under the guise of a license tax, they cannot be taxed under the name of an *ad valorem* tax, and would, as long as they remained in their original condition in his possession, be non-taxable. That part of every merchant's stock of goods which he had brought from another state would remain, as long as it might be unsold, free, not only from merchant's tax, but from the general state property tax.

Certainly, since *Woodruff* v. *Parham*, 8 Wall. 123, until very recently, no such contention as that made in behalf of petitioner would have been advanced. *Woodruff* v. *Parham* was a case in which it appeared that the city of Mobile had imposed a tax on sales at auction and other subjects of taxation. Woodruff, the plaintiff, in the course of his business sold goods and merchandise, the products of states other than Alabama, to purchasers in the original packages, and refused to pay the city tax on such sales. MILLER, J., delivering the opinion of the court, said:

"The case before us is a simple tax on sales of merchandise imposed alike on all sales made in Mobile, whether * * * by a citizen of Alabama or of another state, and whether the goods sold are the produce of that state or some other. There is no attempt to discriminate injuriously against the products of other states or the rights of their citizens, and there is therefore not an attempt to fetter commerce among the states, or to deprive the citizens of other states of any privilege or immunity possessed by citizens of Alabama."

In *Machine Co.* v. *Gage*, 100 U. S. 676, it was decided that a state law imposing an annual tax on all peddlers of sewing-machines, without regard to the place of manufacture, was not in violation of the constitution. SWAYNE, J., after review of all the cases, says:

"In all cases of this class it is a test question whether there is any discrimination in favor of the state or of the citizens of the state which enacted the law. When there is such discrimination is fatal. In the case before us the statute in question makes no such discrimination. It applies alike to sewing-machines manufactured in the state and out of it. The exaction is not an unusual or unreasonable one. The state, putting all such machines upon the same footing, had an unquestionable right to impose the burden."

In *Brown* v. *Houston*, 114 U. S. 622, 5 Sup. Ct. Rep. 1091, (1884,) it appears that a state tax of six mills had been levied on all property situated in the state of Louisiana. Plaintiffs mined coal in Pennsylvania, and shipped it in flats to Louisiana. At the time of the assessment it

had just arrived from Pittsburgh, and was in the hands of plaintiffs' agents, afloat in the Mississippi river in the same boats in which it had arrived, and was held for sale by the boat-load. The court, by BRADLEY, J., after stating, on the authority of *Woodruff* v. *Parham*, *supra*, that the term "import" did not apply, because article 1, § 10, affected only foreign importations, and not articles carried from one state into another, says:

"It was not a tax imposed on coal as a foreign product, or as the product of another state than Louisiana, nor a tax imposed while it was in a state of transit through that state to some other place of destination. It was imposed after the coal had arrived at its destination, and was put up for sale. The coal had come to its place of rest for final disposal or use, and was a commodity in the market of New Orleans. * * * It had become a part of the general mass of property in the state, and as such it was taxed for the current year, as all other property in the city of New Orleans was taxed." "With the exception of goods imported from foreign countries, still in the original packages, and goods in transit to some other place, why may not [a state assessor of taxes] assess all property, provided the assessment be a general one, without discrimination between the goods of different states?"

The three cases of *Woodruff* v. *Parham*, *Machine Co.* v. *Gage*, and *Brown* v. *Houston*, *supra*, are all recent, and are all cases in which the merchandise taxed by the respective state authorities was, at the time the tax was imposed, in the hands of the importer into the state, in a condition which had not been changed since its importation. *Woodruff* v. *Parham* and *Machine Co.* v. *Gage* were license taxes. *Brown* v. *Houston* was a general property tax, which fell, as is noted by GRAY, J., in the dissenting opinion in *Leisy* v. *Hardin*, 135 U. S. 151, 10 Sup. Ct. Rep. 681, on the property, the right of the state to tax which was in dispute, "in its original condition and original package." They are therefore authorities in point upon petitioner's contention, and, if unreversed, are conclusive of the matter *sub lite*. It is contended by counsel that they have been reversed by *Robbins* v. *Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. Rep. 592, and *Leisy* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. Rep. 681; and that under the present rulings of the supreme court there is practically no difference in effect upon the state's taxing power between the provision in the constitution prohibiting duties on imports and that giving to congress the power to regulate commerce among the several states. This argument is drawn from the opinion of Justice BRADLEY in the first of the two last-mentioned cases and that of the chief justice in second. "It is strongly urged," says BRADLEY, J., "that no discrimination is made between domestic and foreign drummers; but that does not meet the difficulty. Interstate commerce cannot be taxed at all." 120 U. S. 489, 7 Sup. Ct. Rep. 592. "Under our decision in *Bowman* v. *Railway Co.*, 125 U. S. 465, 8 Sup. Ct. Rep. 689, they had the right to import this beer into the state, and, in the view we have expressed, they had the right to sell it, by which act alone it would become mingled in the common mass of property in the state. Up to that point of time we hold that, in the absence of congressional permission to do so, the state had no power to interfere, by seizure or any other action, in prohibition

of importation and sale by the foreign or non-resident importer." FULLER, C. J., in *Leisy* v. *Hardin*, 135 U. S. 124, 10 Sup. Ct. Rep. 689.

The argument for petitioner is this: Under the decision of the supreme court in *Bowman* v. *Railway Co.*, 125 U. S. 507, 8 Sup. Ct. Rep. 689, cited by the chief justice, federal control of interstate commerce does not stop at the state line, but goes with the goods which are its subjects to its place of destination within the state. Under *Leisy* v. *Hardin*, *supra*, which goes a step further, interstate commerce includes the right to sell such merchandise within the state, and the state cannot interfere with such sale in any way. The transportation into and sale within a state being thus held, as petitioner contends, to be interstate commerce, neither of these acts can be taxed, for, as is decided in *Robbins* v. *Taxing Dist.*, *supra*, interstate commerce cannot be taxed at all.

The case of *Robbins* v. *Taxing Dist.* is so recent a one, and is so well known to the profession, that its facts may be very briefly stated. The plaintiff, a citizen of Ohio, was arrested for the act of soliciting trade by the use of samples for the Ohio firm of Rose, Robbins & Co., of which he was an agent, without taking out the state drummer's license. It was held by the supreme court, the chief justice and two associate justices dissenting, that a state could not levy a tax or impose any other restriction upon the inhabitants of other states for selling or seeking to sell their goods in such state before they were introduced therein, even though an equal tax should be imposed upon inhabitants of the taxing state. In his dissenting opinion WAITE, C. J., says:

"I am unable to see any difference in principle between a tax on a seller by sample and a tax on a peddler; and yet I can hardly believe it would be contended that the provision of the statute now in question, which fixed a license fee for all peddlers in the district, would be held unconstitutional in its application to peddlers who came with their goods from another state, and expected to go back again."

I quote from the dissenting opinion to show the limits of what was actually decided. The court did not hold that a merchant bringing his goods from another state into Tennessee, for sale there, could not be taxed, but only that he could offer them for sale there, without being compelled to pay for that privilege, and that he might do so by an agent and by the use of samples. To guard against any misconception of the extent of the decision, the judge rendering the prevailing opinion expressly states that if the goods were in the state, and part of its general mass of property, they would be liable to taxation in the same manner as other property of similar character. "When goods are sent from one state to another for sale, or in consequence of a sale, they become a part of the general property, and amenable to its laws, provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way as other goods are. But to tax the sale of such goods, or the offer to sell them, before they come into the state is a very different thing, and seems to us clearly a tax on inter-

state commerce." *Robbins* v. *Taxing Dist.*, 120 U. S. 497, 7 Sup. Ct. Rep. 598. It is in the next paragraph, in answer to the argument that Tennessee drummers and those of other states were taxed alike, that Justice BRADLEY says: "But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce." It needs no argument to show that the interstate commerce referred to in the last sentence did not include the selling by the original importer of goods brought into the state by him, or that Justice BRADLEY adhered in the drummer's case to the opinion rendered by him in *Brown* v. *Houston*, that such goods are taxable by a state.

In deciding *Leisy* v. *Hardin* the supreme court put its decision on the interstate commerce provision of the constitution, and held that any interference, by seizure or by any other action, in prohibition of the sale of goods by their non-resident importer was a regulation of interstate commerce, but did not decide that a tax was such an interference. The fair inference from the one case is that a non-discriminating tax on commodities brought into a state by a non-resident is not a tax on interstate commerce, and from the other that the power to sell is an adjunct of, and necessarily involved in, interstate commerce, which may not be interfered with in the way in which the state legislature of Iowa has attempted to do. The reasoning in the two cases does not conflict.

Counsel for petitioner strongly urged the decision given in this circuit in *Fertilizing Co.* v. *Board of Agriculture*, 43 Fed. Rep. 609, as conclusive in his favor. That was a case in which the state of North Carolina had provided that no commercial fertilizers should be sold or offered for sale until the manufacturer or importer should obtain a license from the treasurer of the state, for which he should pay a privilege tax of $500 per annum for each separate brand. The opinion of the court was rested, not upon article 1, § 10, of the constitution, but upon article 1, § 8, the court saying that it was immaterial whether or not it was within the meaning of the constitution an import tax, as it was clearly a tax on interstate commerce. To the opinion given in that decision I still adhere, and for the reasons given in it. The point involved was to a considerable extent a new one, and it was necessary to resort for its elucidation to general principles drawn from what appeared to the court to be the necessary effect of such taxations as that under consideration upon commerce between the states. Speaking to this point the court said:

"If the power were given to a state to tax all imports from other states without control, provided equal taxation were laid upon the same articles if produced or made in the state, a state would practically have the power to prohibit the importation of any article not made in it. North Carolina might tax the importation of manufactured cloths and Massachusetts that of cotton or tobacco. If this tax can be sustained, it is certain that a license tax in these words would be constitutional: 'No manufactured cloth shall be sold or offered for sale in this state until the manufacturer or person importing the same shall first obtain a license therefor, and pay a tax of five hundred dollars.' A similar tax upon the different brands of tobacco might be levied

in any state that does not manufacture tobacco. * * * It must be evident that a requirement of equality of taxation on the imported and home article would be no protection against such taxation as would seriously check if it did not destroy commerce between the states." 43 Fed. Rep. 613.

The fertilizer tax being levied upon the selling or offering for sale of fertilizers, was, as far as it affected non-residents selling or offering to sell such commodities without bringing them into the state, precisely within the decision of the drummer's case. It was further in effect, as above stated, one of a class of discriminating taxes, and to uphold it would be to admit a principle of state taxation allowing each state to protect its own manufactures from the competition of non-state manufactures. The court, in considering it, was not limited to the act itself, but could avail itself of the knowledge which was accessible to it, in common with all the world, of the state of trade and manufacture within and without North Carolina; or, in other words, take judicial notice of the facts bearing upon the taxation in question, and could from these facts ascertain the character of the impost in question.

Leaving out of consideration all taxes directly or indirectly imposed upon acts of trade between the states, (which are in every case inadmissible,) and considering only taxation upon merchandise or business not laid upon it as interstate or foreign to the taxing state, but yet objected to as obnoxious to the constitution because it, in effect, affects commerce between the states, we find that the test of constitutionality is the absence or existence of discrimination. *Machine Co.* v. *Gage, Brown* v. *Houston*, and other cases already cited. But the mere fact that an equal tax is laid upon the commodities or business of the home and foreign state is not conclusive of absence of discrimination. *Robbins* v. *Taxing Dist.*, *supra*. Whenever the effect of a state tax upon a particular commodity is to protect the productions of the taxing state from competition with such commodity, or to evidently impose the burden of the state revenue on goods produced outside the taxing state, and to favor home productions generally, it may be well contended that it is an interference with interstate commerce. Should a tax be imposed upon a commodity for the purpose of preventing its sale at all within the state,—for instance, should a state impose such a prohibitive tax on spirituous liquors as should stop their sale,—the case would appear to come within the mischief and reason of *Leisy* v. *Hardin*, and to be unconstitutional. A strong argument might be made against all state taxation of special objects of merchandise, on the ground that the power of taxation, being in its nature unlimited, the power to tax involved the power to prohibit; and also for the reasons urged by NELSON, J., in the dissenting opinion in *Woodruff* v. *Parham*, that such taxation involved generally the power to discriminate in favor of home manufactures. But no argument of that kind applies to the case of the application for a writ of *habeas corpus* now under consideration. In no manner can a general tax upon all merchandise, which this tax in effect is, be made discriminating. I do not regard the single exception in the statute as material. Such taxation cannot be used to favor the manufacture of particular ar-

ticles, or of home articles in general, or to in any way check the business of the purchase and sale of goods brought from other states excepting in the degree that all taxation checks trade. It is not laid upon foreign goods as such. It simply lays an equal tax upon all North Carolina merchants, affecting alike their home and foreign trade. The imposition of the tax is one within the power of the state, and violates no provision of the constitution of the United States.

I have not inquired into the question of whether or not this application is prematurely brought. The petitioner is imprisoned, not for refusing to pay a tax, but for the preliminary matter of refusal to make a sworn statement of his purchases. I simply note the fact. The decision is placed on the constitutionality of the law, the matter upon which I understand both parties (the state and petitioner) desire an opinion. The petition, showing upon its face that applicant is not entitled to a writ of *habeas corpus*, has been denied.