*In re* SPAIN *et al.*

*(Circuit Court, E. D. North Carolina. July 3, 1891.)*

1. PEDDLERS—LICENSES—CONSTITUTIONAL LAW.
    Laws N. C. 1889, c. 216, § 24, which provides that "every person, a citizen of the United States, authorized to do business in this state, who, as principal or agent, peddles * * * goods, wares, or merchandise, shall pay a license tax as follows: * * *," is unconstitutional as to citizens of other states, as regulating interstate commerce.

2. SAME—SALE BY SAMPLES.
    Where manufacturers of household goods of West Virginia sent their agents into North Carolina to sell goods by sample on the installment plan, the goods to be delivered to each purchaser by the agent afterwards, the fact that the goods were to be delivered by the agent does not make him liable to pay tax as a peddler, as prescribed by Laws N. C. 1889, c. 216, § 24.

At Law. Application by A. Spain and W. G. McCune for a writ of *habeas corpus.*

BOND, J. The above-named parties were employed by Gately & Conroy, manufacturers and dealers in agents' specialties, to sell their goods, which consisted of lamps, lamp-shades, casters, lambrequins, and every variety of household goods. Gately & Conroy were citizens of West Virginia, and their manufactory was at Charleston in that state. The petitioners, in pursuit of their business, reached Raleigh, N. C., and proceeded to sell the goods of Gately & Conroy on the installment plan, by samples. Their method was to carry samples from door to door, and, if they found anything exhibited was wanted by the householder, the householder or purchaser ordered it by written order direct from the manufacturers at Charleston, W. Va. No sample in the hands of the petitioners was ever sold. When the purchasers' orders reached Charleston the variety of household articles were all packed in one or more boxes, and were consigned to petitioners, to be by them delivered. Upon delivery the purchaser signed another contract with the manufacturers, respecting future payments, which was forwarded to them at Charleston. The form of the order and agreement to pay on the installment plan is here inserted:

| | |
|---|---|
| Date.................. 189.. | Place.........................Date........189.. |
| Subscriber.... ............... | This is to certify that I have this day ordered from |
| Address..................... | Gately & Conroy, through their agent.......... |
| Article...................... | ....one................................................. |
| Price...................... | to be delivered................................... |
| Delivered............. 189.. | Signed ............................................ |
| Amount paid................ | Address.......................................... |
| Agent........................ | Occupation......................................... |

NOTE. All canvassing required to be done by sample, and above spaces filled.

Collect⸺

No agreement recognized that is not contained in this contract.

For the sum of $———, to be paid by me, the undersigned, Gately & Conroy have this day sold and delivered to me the following chattels: * * * I have paid on account of said purchase price the sum of $——— cash, and I am to pay the balance as follows: $——— each and every ——— until the full amount is paid. To secure deferred payments I hereby relinquish unto the said Gately & Conroy all my right, title, and ownership in and to said chattels, to have and to hold the same until said indebtedness is paid; and in consideration that I will meet said payments promptly, and will safely keep said chattels, and use the same with care at ———, and that I will not remove the same therefrom, without their knowledge and consent first obtained, the said Gately & Conroy hereby permit me to hold said chattels for them, and to enjoy the use of the same, while in my possession, on the following conditions: If I fail to promptly pay any one of said deferred payments when the same become due, or if I misuse said chattels, or remove, or attempt to remove, the same, or any part thereof, from said location, or in case of the seizure of the same by process of law, or in case the said Gately & Conroy have, in their opinion, good reason to fear for the safety of their interest in said chattels, the said Gately & Conroy are to have, and are hereby conceded, the right to take said chattels back into their possession, without previous demand, and without legal writ; and for that purpose I hereby give them or their agents the authority to enter my premises without legal process, at any reasonable hour of the day, and carry said chattels away. It is expressly understood, however, that if, for any of the foregoing reasons, said chattels are retaken by said Gately & Conroy, under the terms of this instrument, the said Gately & Conroy may repair and store the same at my expense, and may sell the same within a reasonable time, at private sale or otherwise, in the regular course of business, and pay over to me or my assigns the proceeds of such sale remaining after first deducting therefrom all sums still owing by me on account of the above-mentioned deferred payments, together with all reasonable charges and expenses attending the recovery, repair, storage, and sale of said chattels, (including court costs and attorney's fees.)

Party's name in full .................................................

| Home address: | Witness our hands and seals this |
|---|---|
| No............................. street. | ——— day of ———, 189—. |
| Post-office...................... ....... | GATELY & CONROY. [Seal.] |
| State .. ...................... | .................... [Seal.] |
| Agent .... ......................... | |

There is no dispute about the facts. For conducting this business the petitioners were arrested by the authorities of North Carolina, and, being held in custody, have petitioned to be released on *habeas corpus*, because their arrest and imprisonment are in violation of the constitution

v.47F.no.3—14

of the United States. The charge against the petitioners is that they violated chapter 216, § 24, of the Laws of North Carolina of 1889. This chapter and section, so far as this case is concerned, are in the words following:

"Every person, a citizen of the United States, authorized to do business in this state, who, as principal or agent, peddles * * * goods, wares, or merchandise, shall pay a license tax as follows: * * *."

The tax prescribed petitioners refused to pay. The question, then, to be determined is whether or not this act is in violation of the provision of the constitution, which gives to congress the power to regulate commerce between the states. In the case of *Robbins* v. *Shelby County Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. Rep. 592, the supreme court has said, in a most elaborate opinion by Justice BRADLEY, that the negotiation of sales of goods which are in another state for the purpose of introducing them into the state where the negotiation is made is interstate commerce. The Carolina statute applies to every person, a citizen of the United States, and makes no discrimination between the citizens of that state and those of the other states. But in the same opinion the supreme court determines that this is of no consequence, because interstate commerce cannot be taxed at all, whatever a state may choose to do in the way of taxing its own citizens engaged in trade. We may conclude then, safely, that these petitioners, when engaged in showing the samples of goods manufactured by their principals in West Virginia, were engaged in interstate commerce, and that, whether or not they came within North Carolina's statutory definition of peddlers, they could not be taxed by that state. So far the facts in this case coincide with those in *Robbins* v. *Shelby County Taxing Dist.* There is a fact, however, here which it is argued distinguishes it from that case. It is admitted that, while these petitioners — "drummers," as they are styled in *Shelby County Taxing District Case*—were engaged in the sale of goods from the West Virginia factory, which were ordered by the purchaser directly from that state, the whole of the articles sold, comprising every variety of small household stuff, was placed in a box or boxes, consigned in bulk to petitioners for distribution, and that, when the box containing them was opened, the property became intermingled with the property of the state, and was taxable, and the peddling of it liable to the tax prescribed. We are of opinion that under the decisions of the supreme court this property did not become taxable in North Carolina until it reached the purchaser. It is idle to say, as the supreme court does in the case quoted, that a non-resident may send drummers or persons to solicit sales in a sister state, but that the state may tax him for making delivery of the goods sold. If these goods which petitioners sold in North Carolina had been placed in charge of an express company, packed in boxes, with directions to open the box at the point of consignment, and to deliver to the parties whose names were on a descriptive book the several articles set down thereon to them as purchasers, would the express company have been a peddler? The right to sell implies the obligation and right to deliver. It is as much interstate commerce

to do the one as the other. We are of opinion that the arrest of these parties was illegal for the reasons above given, and direct their discharge from custody.