### In re SCHECHTER.

(Circuit Court, D. Minnesota, Third Division. October 13, 1894.)

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—STATUTORY REGULATION BY STATES.
    A state statute requiring every person selling fruit trees or other nursery stock grown outside the state to file an affidavit with the secretary of state, and a bond of $2,000, and to exhibit to each purchaser a certificate of the secretary that he has complied with these provisions (Laws Minn. 1887, c. 196, §§ 1-3), is unconstitutional, as imposing vexatious and annoying restrictions upon interstate commerce (article 1, § 8, cl. 3), and cannot be upheld on the ground that it is intended to protect the citizens of the state from the fraudulent representations of such dealers.

2. SAME—SPECIAL PRIVILEGES.
    "When a state undertakes by statute to deprive citizens of other states who deal in sound articles of commerce produced in those states of that presumption of honesty and good intent which it indulges in favor of its own citizens who deal in its own products, and which the law raises in favor of every man, it effectually deprives the citizens of those states of some of the most valuable privileges and immunities its own citizens enjoy."

This was a writ of habeas corpus to procure the release of C. H. Schechter from imprisonment under commitment of a justice of the peace.

N. Kingsley and W. E. Todd, for petitioner.
Henry A. Morgan and A. L. Hoppaugh, for the State.

SANBORN, Circuit Judge (orally from the bench). The prisoner, a citizen of the state of Iowa, is deprived of his liberty under the commitment of a justice of the peace of the state of Minnesota, on the sole ground that, as the agent of citizens of the state of Illinois, he sold fruit trees that were grown in the state of Illinois in the state of Minnesota, without complying with the provisions of sections 1-3 of chapter 196 of the Laws of Minnesota for the year 1887. There is no claim that any false representations were made or any fraud committed in this sale. Section 1 of this chapter provides that it shall be unlawful for any person to sell or offer for sale any tree, plant, shrub, or vine, not grown in the state of Minnesota, without first filing with the secretary of state an affidavit setting forth his name, age, occupation, and residence, and, if an agent, the name, occupation, and residence of his principals, and a statement

as to where the nursery stock to be sold is grown, together with a bond to the state of Minnesota, in the penal sum of $2,000, conditioned to save harmless any citizen of this state who shall be defrauded by any false or fraudulent representations as to the place where such stock sold by such person was grown, or as to its hardiness for climate. Section 2 provides that the secretary of state, on compliance with the provisions of section 1, shall give to the applicant a certificate setting forth the facts that show a full compliance by the applicant with the provisions of the act, and that said applicant shall exhibit this certificate, or a copy of it, to any person to whom stock is offered for sale. Section 3 provides that any person, whether as principal or agent, who shall sell or offer for sale any foreign-grown nursery stock within this state, shall furnish to the purchaser a duplicate order, with a contract specifying that such stock is true to name, and as represented. Section 4 imposes a penalty of not less than $25 nor exceeding $100, or of imprisonment in the county jail for a term not less than 10 nor more than 60 days, in the discretion of the court, for the sale by any person of any foreign-grown nursery stock within this state without complying with the first three sections of the act. There is no law of the state of Minnesota which imposes any such restrictions upon the sale of any tree, plant, or vine grown in this state.

The third clause of section 8 of article 1 of the constitution of the United States provides that "the congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." The effect of this provision of the constitution has been so frequently and forcibly declared by the supreme court of the United States that it is sufficient for the purposes of this case to state a few of the propositions that the decisions of that court have established. The power to regulate commerce among the states was carved out of the general sovereign power held by each state, and granted by the constitution to the congress of the United States. This power was thus vested in congress exclusively, and no state, by virtue of any power not thus granted, whether under the name of the "police power," or under any other name, can lawfully infringe upon this grant. This power to regulate commerce, thus granted to congress, is not subordinate to any of the powers not granted, but paramount to all the powers of the state, and any act of the state which interferes with interstate commerce in a well-known and sound article of commerce is unconstitutional and void. Now, while there are certain subjects in their nature local, such as harbor pilotage, beacons, bridges, etc., regarding which a state may legislate when congress has not, yet when the subject-matter is the sale of a well-recognized article of commerce, such as vines, trees, or shrubs, or any other well-known article of commerce, the product of another state, the subject is in its nature national, susceptible of regulation by rules uniform throughout the nation, and obviously susceptible of wise regulation by such uniform national rules only; and in such a case there can, of necessity, be only one system or plan of regulation, and that congress alone can prescribe. In all cases where congress has passed

no law regulating interstate commerce in any well-recognized article of commerce, that fact is conclusive evidence that it intends such commerce to be free, and any law of the state which prohibits or restricts it must be held to be in violation of the constitution. I do not intend to hold that valid quarantine and sanitary laws may not be passed by the legislature of the state. There is no such question presented in this case. It is not claimed that these trees that were grown in the state of Illinois were deleterious to the health or the comfort, or dangerous to the lives or property, of the citizens of this state. Nor do I intend to hold that a proper inspection law may not be passed by the legislature of this state to prevent the introduction here of any diseased or dangerous article which might interfere with the health, comfort, well-being, or happiness of the people of this state. No questions of that kind are presented in this case. This law imposes a restriction upon the sale of foreign-grown trees by its very terms; and any law which imposes any vexatious or annoying restriction upon the sale of articles that are themselves sound articles of commerce must be held to be an interference with commerce, and thus in violation of the clause of the constitution to which I have referred. To provide that every man who sells a foreign product shall be required to file an affidavit with the secretary of state, and a bond of $2,000, and to exhibit to every man who purchases the article a certificate of the secretary of state that he has complied with these provisions, certainly imposes a vexatious and annoying obstruction to commerce in the article mentioned. For that reason I think that this law is in violation of this clause of the constitution.

Moreover, article 4, § 2, of the constitution of the United States, provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." This provision of the constitution, in my opinion, gives to the citizens of other states the right to introduce and sell the products of those states in Minnesota on the same terms that her own citizens sell like products of this state. The Illinois tree, the Wisconsin vine, the Iowa shrub, that is sound, and is of the same character as that grown in the state of Minnesota, seeking sale in this state, is entitled to be sold by those who deal in it on the same terms and with no greater restrictions than the like article produced in the state of Minnesota; and any restriction which imposes upon the dealers in foreign articles that are themselves sound, burdens that are not imposed on the dealers in like articles produced in the state of Minnesota, in my opinion, violates that provision of the constitution to which I have last referred.

It is said that the bond required here is to prevent the dealers in foreign trees from perpetrating fraud in their sale, and that it is competent for the state to protect its citizens against the fraudulent representations of such dealers. The answer is that when a state undertakes, by statutory regulation, to deprive citizens of other states, who deal in sound articles of commerce produced in other states, of that presumption of honesty and innocence of wrong which it indulges in favor of the dealers in its own products, and which

the law raises in favor of every man, it very effectually deprives the citizens of other states of the most valuable privileges and immunities its own citizens enjoy.

For these reasons, I think the prisoner must be discharged. Let an order be entered to that effect.