[No. 6271.]

Smith v. Farr.

1. **Statutes—Construction**—The purpose of a statute and the question of its constitutionality is to be determined by its natural and reasonable effect. The title or the words used, or words omitted from the context, are not conclusive.—(371)

2. **Constitutional Law—Interstate Commerce — Equal Protection of the Laws**—A statute, the effect of which is to exact a license fee from a citizen of another state who manufactures at his home articles not injurious to health or morals or in anywise dangerous to our citizens, and sends his wares to this state for sale, while no similar imposition is laid upon citizens of this state, is a violation of secs. 8, 10, of art. I, sec. 2 of art. IV, of the federal constitution, and the fourteenth amendment thereto.—(371-377)

3. **Statutes—Classification**—A statute which imposes a license tax upon those transiently or temporarily engaged in the sale of merchandise to the consumer, while exempting those who sell like goods to the merchants, is a wrongful discrimination.—(377-380)

4.  **Police Power**—To sustain legislation as a police measure, it must, as a general rule, tend in some measure to protect the public from some manifest evil.—(379)

5.  **Occupation Licenses**—**Uniformity**—The state may exact a license to engage in any trade, business or profession; but the regulations to this end must not discriminate in favor of one class and against others.—(381)

*Error to Huerfano District Court*—Hon. HENRY HUNTER, Judge.

Mr. J. C. HELM, Mr. A. C. LYON, and Messrs. KELLY & HAINES, for plaintiff in error.

Hon. W. H. DICKSON, attorney general, Mr. S. H. THOMPSON, Hon. JOHN T. BARNETT, attorney general, and Mr. JAMES M. BRINSON, for defendant in error.

The question presented is the constitutionality of the Itinerant Vendors' Act, Session Laws 1905, pp. 274 *et seq.;* Revised Statutes, § 3563 *et seq.* The title of the act is as follows: "An act to prevent and punish fraud in sales of manufactured goods, wares and merchandise by 'Itinerant Vendors,' and to regulate such sales." The following are the sections of the act involved:

"Section 1. The term 'Itinerant Vendor,' for the purposes of this act, shall mean and include any person, either principal or agent, who engages in either a temporary or transient business, in this state, either in one locality or in traveling about the country, or from place to place, selling manufactured goods, wares or merchandise, and it shall include peddlers and hawkers, and also those who, for the purpose of carrying on their temporary or transient business, hire, lease or occupy a building, structure, tent, car, boat, vehicle, store-room, or place of any kind for the exhibition or sale of any manufactured goods, wares or merchandise.

"Sec. 2. The provisions of this act shall not

apply to commercial travelers or agents selling to merchants in the usual course of business, and they shall not apply to the sale of goods, wares or merchandise in original packages from other states as permitted by the laws of the United States applicable to interstate commerce between the states; and provided further, that the provisions of this act shall not apply to the sale of books, papers or school supplies, garden truck or farm produce.

"Sec. 3. Except as permitted by the preceding section of this act, it shall not be lawful for any person to be engaged in any manner in the business of an 'Itinerant Vendor' as defined by section 1 of this act, unless such person shall be duly licensed so to do under the provisions of this act."

Sec. 4 provides that the county clerk and recorder shall grant a license to any person making due application therefor, to engage in the business of an itinerant vendor, and prescribes the steps the applicant must take to secure such license.

By sec. 5 a graduated scale of license fees is provided, ranging from five dollars to two hundred and fifty dollars, and regulated according to the manner the vendor travels in the county in which he engages in business. This section further provides a license fee as follows: "For each itinerant vendor doing business in any building, structure, tent, etc., two hundred and fifty dollars; and for each assistant to any itinerant vendor in any county, there shall be paid the sum of twenty-five dollars."

By sec. 6 the term of the license is fixed at one year.

By sec. 12 it is provided: "Every itinerant vendor who sells or exposes for sale, either at public or private sale, in any county in this state, any manufactured goods, wares or merchandise, without first having procured a license from the county in which

he sells or exposes for sale such manufactured goods, wares or merchandise, as provided for in this act * * * shall be punished by fine of not less than $10 and not more than $100, or by imprisonment in the county jail for a period of not less than 10 or more than 90 days, or by both such fine and imprisonment."

By sec. 16 of the act jurisdiction is conferred upon justices of the peace to hear and determine all criminal proceedings arising under the act.

Plaintiff in error was arrested on a warrant issued by a justice of the peace of Huerfano county for a violation of the provisions of the act and taken into custody by the sheriff. He thereupon applied to the district court for a writ of *habeas corpus,* which was granted. At the hearing the only question raised was the constitutionality of the act in question, as presented by the following agreed statement of facts:

"The petitioner, Ira O. Smith, is a citizen and resident of the state of Washington, and is a commercial traveler employed as a salesman on a salary and not a commission, by The Spaulding Manufacturing Company, whose factory and principal place of business is situated in Grinnell, Poweshiek county, Iowa, said Spaulding Manufacturing Company being a copartnership, all the members of which are citizens and residents of the state of Iowa; that while acting as such agent and salesman and in no other capacity, said Ira O. Smith did, on or about June 27, 1907, sell and deliver a buggy or vehicle to J. T. Hudson, in Huerfano county, Colorado, and received a consideration therefor; that such vehicle was the property of said Spaulding Manufacturing Company, of Grinnell, Iowa, and was sold exclusively for and on behalf of said Spaulding Manufacturing Company; that such vehicle was sent by said Spaulding

Manufacturing Company from its factory, in Grinnell, Iowa, to the state of Colorado for the purpose of being sold, and for no other purpose; that such vehicle was not out of the possession of The Spaulding Manufacturing Company or its agents from the time of its receipt by them, within the state of Colorado, until the same was sold as aforesaid; that such purchaser, J. T. Hudson, was and is not a merchant, but was and is a farmer, who purchased such vehicle for his own use; that neither the said Ira O. Smith nor said Spaulding Manufacturing Company has a fixed or permanent place of business within the state of Colorado.''

It was further stipulated that petitioner had not complied with the terms of the Itinerant Vendors' Act, and did not have a license as thereby required.

The district court held the act valid, and remanded the petitioner to the custody of the sheriff, and the former has brought that judgment to this court for review.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Two propositions advanced by counsel for plaintiff in error in support of their contention that the statute in question is unconstitutional, will be considered: (1) That it undertakes to regulate or impose a burden on interstate commerce; (2) that it is discriminatory.

1. Previous to the adoption of the federal constitution the articles of confederation allowed too much sovereign power to be exercised by the states, and too little by congress. Each state was independent of the other, free to legislate with respect to its own affairs as it saw fit, and pursue that course which its own selfish aims inspired. As might have been expected, the states were regulating commerce

as between each other by legislation the purpose of which was to give the citizens and products of the states passing such laws an advantage over the citizens and products of every other. This condition of affairs was largely responsible for the calling of the convention to revise the articles of confederation. Speaking on this subject, and the necessity of the control of interstate commerce by congress, Chief Justice Marshall, in one of the early cases involving the power of the states to regulate interstate commerce, said:

"It may be doubted whether any of the evils proceeding from the feebleness of the federal government contributed more to that great revolution which introduced the present system than the deep and general conviction that commerce ought to be regulated by congress. It is not, therefore, a matter of surprise that the grant should be as extensive as the mischief, and should comprehend all foreign commerce and all commerce among the states. To construe the power so as to impair its efficacy would tend to defeat an object in the attainment of which the American public took—and justly took— that strong interest which arose from a full conviction of its necessity." — *Brown v. Maryland*, 12 Wheat. 436.

Profiting by experience, and perceiving the necessity for the control of interstate commerce by the national congress, there was incorporated into the federal constitution these plain and comprehensive provisions: Congress shall have power "To regulate commerce with foreign nations, and among the several states, and with the Indian tribes."— Art. I, sec. 8. "No state shall, without the consent of congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."—Art. I, sec. 10.

Under these provisions, it has been universally held that the constitution of the United States confers upon congress the sole power to regulate commerce among the several states.—*Stockard v. Morgan,* 185, U. S. 27; *Caldwell v. North Carolina,* 187 U. S. 622; *Leloup v. Port of Mobile,* 127 U. S. 640; *R. R. Co. v. Husen,* 95 U. S. 465; *Brown v. Maryland, supra; Robbins v. Shelby Co. Taxing Dist.,* 120 U. S. 489; *Brennan v. Titusville,* 153 U. S. 289; *Norfolk & Western Ry. Co. v. Sims,* 191 U. S. 441; *In re Spain,* 47 Fed. 208; *In re Nichols,* 48 Fed. 164; *Ex parte Loeb,* 72 Fed. 657; *Lyng v. Michigan,* 135 U. S. 161; *Asher v. Texas,* 128 U. S. 129; *French v. State,* 52 L. R. A. 160; *State v. Willingham, id.,* 108; *Ames v. People,* 25 Colo. 508; *Guy v. Baltimore,* 100 U. S. 434; *Webber v. West Virginia,* 103 U. S. 344; *Commonwealth v. Caldwell,* 76 N. E. 955; *Welton v. State of Missouri,* 91 U. S. 275.

It follows, therefore, that interstate commerce cannot be taxed by a state; or, as succinctly stated in *Robbins v. Shelby Co. Taxing District, supra:*

"In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems."

Notwithstanding the constitutional provisions mentioned and the decisions of the supreme court of the United States, which are conclusive upon the state courts and state legislatures on the construction of the federal constitution, the reports teem with cases arising under state laws by which, under some guise, attempts have been made to evade the constitutional provisions referred to. Perhaps this is due to the fact that the natural inclination of a state is to protect its own citizens and products to the disadvantage of the citizens and products of other states, but which, if not inhibited, would re-

duce us to rival and jealous sovereignties indulging
in retaliatory legislation, in so far as commerce
between each other was involved. Or it may be
due to the fact that the dividing line between what
constitutes intra and interstate commerce is often
shadowy and difficult to determine. Were it not for
the constitutional provisions under consideration or
others of like import, it would unquestionably come
to pass that the states would assume and maintain
towards each other with respect to interstate com-
merce the attitude of foreign and independent sover-
eignties or adopt the policy of reciprocity in the
matter of legislation on this important subject, and
instead of being integral parts of a harmonious
whole, would be rival sovereignties to such an extent
that antagonisms of a most serious nature would un-
doubtedly arise.

Settled, as it is, that the states have no power to
regulate interstate commerce, the question involved
is whether or not the statute under consideration
violates the federal constitutional provisions on that
subject. In whatever language a statute may be
framed, its purpose and its constitutional validity
must be determined by its natural and reasonable
effect.—*Henderson v. Mayor of N. Y.,* 92 U. S. 259.
The express language employed, or the absence of
express provisions, while important to consider in
construing a statute, are not conclusive. The Itin-
erant Vendors' act defines the term "itinerant ven-
dor" as any person, either as principal or agent,
who engages in a temporary or transient business in
this state, either in one locality or in traveling about
the country, or from place to place, selling manufac-
tured goods, wares or merchandise, except to mer-
chants in the usual course of business. It is at once
apparent, from this definition, that it is a temporary
or transient business which the statute covers, and

that it does not embrace a business conducted from a permanent store or manufactory in the state, for the obvious reason that a business conducted from such an establishment would be neither temporary nor transient, even though the person carrying it on made sales of merchandise or articles manufactured by traveling about the country or hired a building temporarily from which to sell the articles he was engaged in selling or manufacturing. Under the statute, then, a person permanently engaged in the manufacture of buggies in this state would be exempt from its operation. He could travel about the state and sell such vehicles direct to those purchasing for their own use, without paying the license provided or incurring any penalties for seeking and obtaining customers in this way, whereas, one engaged in the manufacture of buggies in a sister state, without a permanent place of business in Colorado, as in the present instance, is inhibited from seeking and obtaining a market for the products of his factory by selling to farmers and other purchasers for their own use, unless he secures a license for the privilege of so doing. That such a regulation imposes a burden upon interstate commerce is so manifest that further discussion would hardly seem necessary, for by the statute the individual who maintains a factory for the manufacture of buggies in this state may sell the products of his factory to purchasers for their own use by traveling about the country, without incurring the expense of a license, while the manufacturer of articles outside the state who maintains no permanent place of business in Colorado must pay the license fee provided before he can dispose of the products of his factory in the same way. If this does not impose a burden upon articles manufactured outside the state for the privilege of disposing of them in this state to purchasers for their

own use, we do not see how it would be possible for the legislature to pass a law having this effect.

Power to collect taxes on property and to require a license on business certainly belongs to the state, but this power must be so exercised as not to violate the supreme fundamental law of the land.— *Fecheimer v. City of Louisville,* 2 S. W. (Ky.) 65. Perhaps no case has yet been decided in which a proposition was announced which would clearly indicate the instances when legislation affecting commerce between the states would be valid; but in *Robbins v. Shelby Co. Taxing District, supra,* Mr. Justice Bradley, speaking on this subject, said:

"It is also an established principle, as already indicated, that the only way in which commerce between the states can be legitimately affected by state laws is when, by virtue of its police power, and its jurisdiction over persons and property, within its limits, a state provides for the security of the lives, limbs, health and comfort of persons, and the protection of property; or when it does those things which may otherwise incidentally affect commerce, such as the establishment and regulation of highways, canals, railroads, wharves, ferries, and other commercial facilities; the passage of inspection laws to secure the due quality and measure of products and commodities; the passage of laws to regulate or restrict the sale of articles deemed injurious to the health or morals of the community; the imposition of taxes upon persons residing in the state or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce or with some other employment or business exercised under authority of the constitution and laws of the United States; and the imposition of taxes upon all property within the state, mingled with and forming part of

the great mass of property therein. But in making such internal regulations a state cannot impose taxes upon persons passing through the state or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce; nor can it impose such taxes upon property imported into the state from abroad, or from another state, and not yet become part of the common mass of property therein; and no discrimination can be made by any such regulations adversely to the persons or property of other states; and no regulations can be made directly affecting interstate commerce. Any taxation or regulation of the latter character would be an unauthorized interference with the power given to congress over the subject.''

None of the conditions which would authorize the state to impose the license fee provided are present. Its police power is not involved. The vehicle which plaintiff in error sold was not dangerous, nor injurious to health or morals, neither does the law purport to be one providing for inspection of manufactured articles brought into the state for the purpose of sale to consumers, or the levy of a tax thereon as part of the mass of property therein. On the contrary, when reduced to its final analysis, the license exacted is nothing more or less than a tax imposed upon outside manufacturers for the privilege of selling their products in this state direct to the consumer, for the reason that manufacturers within the state are relieved from that burden. Such a law clearly violates the provisions of the federal constitution, which counsel for plaintiff in error have invoked.

2. The fourteenth amendment to the federal constitution provides, *inter alia,* that ''No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

States    *    *    *    nor deny to any person within its
jurisdiction the equal protection of the laws.''

Although no rule can be formulated which will
cover every case arising under this provision of the
constitution, it has been said that its purpose being
to guarantee the equal protection of the law, it means
that ''no person or class of persons shall be denied
the same protection of the laws which is enjoyed by
other persons or other classes in the same place and
in like circumstances.''—*Connolly v. Union Sewer
Pipe Co.*, 184 U. S. 540. It has also been held by
the supreme court of the United States that under
this provision no impediment can be imposed to the
pursuits of any one except as applied to the same
pursuits by others under like circumstances, and that
no greater burdens shall be laid upon one than are
laid upon others in the same calling and condition.—
*Id.* It follows, therefore, that when a statute
denies the same rights to persons engaged in the
same business in like circumstances, or discriminates
in favor of one class and against another engaged in
like business under similar circumstances, it violates
this provision of the constitution.—*Barbier v. Con-
nolly*, 113 U. S. 27; *Bacon v. Locke*, 83 Pac. 721;
*Ex parte Deeds*, 87 S. W. 1030; *State v. Wright*, 100
Pac. 296; *Connolly v. Union Sewer Pipe Co., supra;
Yick Wo v. Hopkins*, 118 U. S. 356.

The act exempts from its operation commercial
travelers or agents selling to merchants in the usual
course of business. This is a discrimination without
any reason. An itinerant vendor, as defined by this
act, may, without license, travel from place to place,
carrying with him manufactured articles to sell to
merchants, while another carrying the same article
and traveling in the same way, is inhibited from dis-
posing of his wares to the consumer direct unless he
has paid a license fee for the privilege of making

such disposition of his property in that way. A burden is imposed upon one itinerant vendor from which another is exempt. We can see no reason why one selling to the merchant may do so without paying a license fee while another, who sells the same article to a farmer, must pay that fee. In short, under the statute, one may enjoy a right which is denied another within the same jurisdiction in like circumstances.—*Commonwealth v. Snyder,* 38 Atl. 356.

The federal constitution further provides: ''The citizens of each state shall be entitled to all privileges and immunities of citizens of the several states.''— Sec. 2, art. IV. The statute under consideration clearly violates this provision. As we have pointed out, the citizen of another state who has no permanent place of business in this, is inhibited from selling his manufactured articles to consumers in Colorado, except on payment of a license fee, if he seeks and secures such consumers in a manner which would make him an itinerant vendor, as defined by the act, while a citizen and resident of this state, with a permanent place of business therein, is exempted from its operation. The power of a state to lay and collect taxes cannot be exercised in a manner forbidden by the federal constitution, and when it undertakes, as it has by the statute under consideration, to require a non-resident manufacturer of a sister state who has no permanent place of business in Colorado, to pay for the privilege of selling the products of his factory directly to consumers in this state, and exempts the resident manufacturer from paying for that privilege, it attempts to confer privileges and immunities upon its own residents which it denies to those of other states.—*Ward v. Maryland,* 12 Wall. (U. S.) 418; *Fecheimer v. City of Louisvills, supra; In re Jarvis,* 71 Pac. 675; *In re Schechter,* 63 Fed. 695.

On behalf of counsel for defendant in error it is said (quoting from one of their briefs) :

"The question now before the court is, whether an agent of either a domestic or a foreign principal, can carry manufactured goods, wares and merchandise" about the state "for the purpose of being sold, and for no other purpose," and escape the payment of a state license" on the ground that he is engaged in interstate commerce."

In support of their contention that he cannot, or that interstate commerce is not involved, they assert: "The present act applies to the goods and citizens of Colorado with the same effect as to the goods or citizens of any other state."

A fair construction of the act, as we have shown, will not support this assertion, for the reason that one maintaining a permanent place of business within the state may sell to consumers the articles of merchandise in which he deals, without the payment of any license fee, while one who has no permanent place of business within the state, which must necessarily include a manufacturer in the state of Iowa, is prohibited from doing so unless he pays the fee provided or maintains a permanent place of business in Colorado. In support of their claim that interstate commerce is not involved, counsel seem to place much reliance upon *Emert v. Missouri,* 166 U. S. 311, and *Machine Co. v. Gage,* 100 U. S. 676, and claim that because the buggy had previously been sent to this state for the purpose of sale, it had become a part of the general mass of property of the state. An examination of those cases discloses that the acts under consideration were not held valid, because the property which was the subject of sale had previously been sent to the state for sale, but for the reason that thereby no greater burdens were imposed upon residents than nonresidents. In the *Gage case* (quot-

ing from the syllabus), the gist of the decision is thus stated:

"The supreme court of Tennessee decided that the law of that state imposing an annual tax upon '*all*· peddlers of sewing machines and selling by sample,' levies such 'tax upon *all* peddlers of sewing machines without regard to the place of growth or produce of material or manufacture.' *Held,* that the law so construed is not in violation of the constitution of the United States."

In that case it was said that the statute of Tennessee in question was not discriminatory for the reason that "It applies alike to sewing machines manufactured in the state and out of it. The exaction is not an unusual or unreasonable one. The state putting all such machines upon the same footing with respect to the tax complained of, had an unquestionable right to impose the burden."

In the *Emert case* the court determined (quoting from the syllabus):

"A statute of a state by which peddlers of goods going from place to place within the state to sell them are required under penalty to take out and pay for a license and which makes no discrimination between residents or products of the state and those of other states, is not, as to peddlers of goods previously sent to them by manufacturers in other states, repugnant to the grant by the constitution to congress of the power to regulate commerce among the several states."

In discussing the statute, the court, in the course of its opinion, said:

"It makes no discrimination between residents or products of Missouri and those of other states, and manifests no intention to interfere in any way with interstate commerce."

But the act under consideration is not of this

character. We may concede that the buggy had become a part of the general mass of the property of this state, but for the reasons given it was discriminated against and the owners inhibited from selling it except upon payment of a license fee, because they were nonresidents and maintained no place of business in this state, when no such fee is exacted from one maintaining a permanent place of business within the state. That such discrimination cannot be maintained is fully sustained by the holding in the *Emert case,* which upheld the law there under consideration upon the ground that the license exacted applied to all engaged in the business of peddling sewing machines without regard to their place of manufacture or the residence of the person so engaged.

Speaking of the *Emert case* and the statute of the state of Missouri, there considered, Mr. Justice Peckham, in *Schollenberger v. Pennsylvania,* 171 U. S. 1, said: "It was the privilege of selling in a peculiar way, as a peddler, which was licensed in the *Emert case,* and such a person, it was therein decided, could properly be made to pay a license for selling in that way an article manufactured in another state and sent into Missouri as well as for selling in the same way articles manufactured in Missouri, so long as there was no discrimination between the two classes of goods."

In support of the claim of counsel for defendant in error that the statute is not discriminatory, it is urged that its purpose is to prevent fraud, and that the classification made is for this object; or, in other words, that the statute should be upheld upon the ground that it is only a valid exercise of the police power of the state to prevent the commission of frauds by itinerant vendors. It is true that the act is entitled "An act to prevent and punish fraud in

sales of manufactured goods, wares and merchandise by itinerant vendors, and to regulate such sales''; but the title of an act is not conclusive. Its purpose must be determined from its effect. The police power of a state cannot transcend the fundamental law, and cannot be exercised in such manner as to work a practical abrogation of its provisions.—*R. R. Co. v. Husen, supra; State v. Chittenden,* 107 N. W. 500.

So that while it is the province of the general assembly to determine in what instance the police powers of the state may be exercised, it is the province of the courts to determine whether or not an act based upon the assumption of such power is valid. In order to sustain legislation as a police measure, it must appear, as a general rule, that it tends in a measure to protect the public from some manifest evil.—*State v. Ashbrooke,* 55 S. W. 627. Classification adopted for legislative regulation, as held by the supreme court of the United States, in *Gulf, Colo. & S. F. Ry. Co. v. Ellis,* 165 U. S. 150, "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed and can never be made arbitrarily and without any such basis."—*Seaboard Airline Ry. Co. v. Simon,* 47 Southern 1001; *Connolly v. Union Sewer Pipe Co., supra.*

If the purpose of the act and classification was to prevent fraud, why should itinerant vendors be permitted to sell to merchants and not to consumers? Or, waiving this, if the purpose was to prevent fraud and protect consumers, why should not the person maintaining a permanent place of business in the state, but who travels about or sends his agents through the country, be permitted to sell to consumers in this way without having obtained a license, and one who maintains no permanent place of busi-

ness in the state be required to pay a license fee for the privilege of selling in the same way? There is just as much opportunity for fraud and deceit in the one case as the other. In short, the act with respect to the class of vendors under consideration does not tend to prevent fraud, and the classification made bears no reasonable or just relation to the object indicated by its title, but is merely arbitrary, the effect of which is to discriminate in favor of residents of this state, and impose burdens and obligations upon nonresidents dealing in the same class of manufactured articles and seeking a market in the same way. We think this case comes within the rule laid down in *Ames v. The People*, 25 Colo. 511 wherein it was stated:

"A state, through its legislature, may require a license to engage in any trade, business or profession, but such license must be uniform, and not discriminate in favor of one class and against another, nor in favor of its own citizens as against those of other states, or require a license which will constitute a regulation of interstate commerce."

In that case we held that a statute "which is not uniform in its operation, but in favor of one and against another, although each is engaged in the same business and vending the same character of articles in a similar way," was unconstitutional.

In determining this case we must not be understood as expressing any opinion on the validity of the law with respect to peddlers and hawkers, as defined by the lexicographers.

We conclude that as to plaintiff in error the statute is unconstitutional. The judgment of the district court is, therefore, reversed, and the cause remanded with directions to enter an order discharging plaintiff in error from custody.     *Reversed.*

Decision *en banc.*