June 3,
1935.

## OPINION OF THE JUSTICES.

At the present session of the legislature the house of representatives passed the following resolution:

"Resolved, That the Speaker of the House be and hereby is directed to obtain from the Honorable Judges of the Supreme Court their opinions upon the following question:

"Do the provisions of House Bill No. 405, a copy of which is annexed hereto and made a part of this resolution, violate any of the provisions of our State and Federal constitutions?"

The following answer was returned:

*To the House of Representatives:*

The justices of the supreme court give this opinion upon the inquiry of your resolution of May 22, concerning the validity, under the state or the federal constitution, of House Bill No. 405.

No provisions of the bill have been brought to our notice which are thought to conflict with the state constitution. But the bill seems repugnant to the provisions of the federal constitution relating to a state's levy of import duties and to federal regulation of foreign commerce.

In arriving at our conclusion we have followed the well established rule that with reference to these provisions the constitutionality of a statute is to be decided by an examination of its real purpose and its actual effect. As the rule has been stated: "A State law, although apparently for the protection of the public health, will be scrutinized as to its results in actual practice to ascertain its essential characteristics, and will not be upheld merely because of its declared purpose. A statute which really operates as an undiscriminating exclusion of the products of other States will not be sustained because under the guise of a health statute. If it is in fact a regulation of interstate commerce in its primary application, then it is invalid regardless of its dress or designation .... Nor is it of consequence that the State law is not prohibitory in its nature, provided its effect is to discrimi-

nate against the products of other States and in favor of its own . . . . There is, however, a large class of State laws which have been upheld as valid police regulations, although incidentally they bear upon interstate commerce. If such statutes are a genuine exercise of the police power, are general in their operation, and have a rational connection with the end to be accomplished of protecting and promoting the public health, they will be sustained, even though they may affect or burden interstate commerce in some respects." *Commonwealth* v. *Moore*, 214 Mass. 19, 25.

The supreme court of the United States has declared the method of treatment to the same effect in this language: ". . . we accept the decision of the state court of last resort, respecting the proper construction of the statute, but are in duty bound to determine the questions raised under the Federal Constitution upon our own judgment of the actual operation and effect of the tax, irrespective of the form it bears or how it is characterized by the state courts." *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 294. In another case the same court said: "Undoubtedly, a State may establish regulations for the protection of its people against the sale of unwholesome meats . . . . But it may not, under the guise of exerting its police powers, . . . make discriminations against the products and industries of some of the States in favor of the products and industries of its own or of other States." *Brimmer* v. *Rebman*, 138 U. S. 78, 82. The case was affirmed and followed in *Voight* v. *Wright*, 141 U. S. 62.

Granting that in the exercise of its police power a state may pass inspection and license laws in proper self-protection and charge reasonable fees to meet the expense of administering the laws, the power is under the restraint that its exercise shall not operate to control or regulate foreign or interstate commerce, except as it may be incidentally affected in common treatment with local commerce.

"In the exercise of its police powers, a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to the health or which would endanger the lives or property of its people. But if the State, under the guise of exerting its police powers, should make such exclusion or prohibition applicable solely to articles, of that kind, that may be produced or manufactured in other States, the courts would find no difficulty in holding such legislation to be in conflict with the Constitution of the United States.

"The power of the National Government over commerce with foreign nations and among the several States is broad and compre-

hensive. It reaches the interior of every State of the Union, so far as it may be necessary to protect the products of other States and countries from discrimination by reason of their foreign origin. *Brown* v. *Maryland*, 12 Wheat. 419." *Guy* v. *Baltimore*, 100 U. S. 434, 443.

The bill seeks to place burdens on the business of dealing in and selling bread and pastry made in and imported from a foreign country. If the products are made locally or in another state, they are free from the burdens. No reason suggests itself why, in the interest of public health or in other public concern, bread and pastry made in a foreign country should be inspected and sold under license while that made in this country has no need of such regulation. The purpose of the bill to discourage the importation from another country of these products is reasonably apparent. The bill provides that the secretary of state before issuing a license to an applicant shall have an investigation made of the premises where the products are manufactured and "examine working conditions." The license is to be granted if the applicant satisfies the secretary that he is suitable, and pays the fee. Not only is the importer obliged to pay a license fee, but as well his salesmen and the dealers in the products after their importation. The bill is silent as to any test or formula of the applicant's suitability and the secretary has no defined guidance for determining it. The reference to working conditions, the substantial fees required from salesmen and dealers for licenses unrelated to inspection, and the amount of the importer's fee combine as items to indicate the real purpose of the bill to levy a charge in the nature of an import duty on the foreign made products which will either act as a barrier to their importation or place them on a basis which competition may more readily meet.

The result is that the bill is considered to propose fatally defective legislation. By its discriminatory features it will amount to a direct regulation of foreign commerce in placing it under restrictions not applicable to other commerce in the same kind of property. Also, it will be in defiance of the limitation of a state's power to tax the importation of goods. The indirection of method does not overcome the bar. "When the Constitution prohibits States from laying duties on imports, the prohibition not only extends to a tax upon the act of importing, but also to one upon the occupation of the importer, or upon the articles imported." *Willcuts* v. *Bunn*, 282 U. S. 216, 228.

Whether the requirement of the bill that the license and certificate to be issued shall be conspicuously displayed at the licensee's place

of business is valid as a special regulation, is a point of doubt. Similar legislation has not been upheld. *People* v. *Hawkins,* 157 N. Y. 1; *Opinion of the Justices,* 211 Mass. 605; *Jewett Bros. & Jewett* v. *Small,* 20 S. D. 232; *State* v. *Jacobson,* 80 Ore. 648; *Collins* v. *New Hampshire,* 171 U. S. 30.

JOHN E. ALLEN.
THOMAS L. MARBLE.
OLIVER W. BRANCH.
PETER WOODBURY.
ELWIN L. PAGE.

June 3, 1935.