NATHAN BOBER ET AL.
*vs.*
MICHAEL A. CONNOR, COM. OF MOTOR VEHICLES

Superior Court        New Haven County        File No. 57489

MEMORANDUM FILED MARCH 12, 1940.

*Woodruff & Klein,* of New Haven, for the Plaintiffs.

*Francis A. Pallotti,* Attorney General; *Frank J. DiSesa,* Assistant Attorney General, for the Defendant.

McEVOY, J.   The plaintiffs are engaged in the business of purchasing and selling used automobiles.

They bring this action in their own names and on behalf of others likewise engaged in the same business in the State of Connecticut.

The defendant is named in his capacity as Commissioner of Motor Vehicles of this State.

The action arises out of the enactment and attempted enforcement of the provisions of section 482e, subdivision (b), of the 1939 Supplement to the General Statutes, which is an amendment of section 545c of the 1935 Cumulative Supplement to the General Statutes.

The plaintiffs claim: "1.   An injunction restraining and enjoining the defendant from enforcing or attempting to enforce the provisions of the aforesaid Act, insofar as it applies to the collection of a ten dollar registration fee on all used automobiles

brought into this State for sale; the requiring proof of clear title and freedom from liens upon such used motor vehicles; or from denying to the owner of any such vehicle the right to recover possession of the same or the right to collect notes accepted in the sale of any such motor vehicle."

This action was instituted on August 11, 1939.

Prior to the institution of this action an application, practically similar in claim, was made to three judges of the United States District Court who filed their memorandum of decision on August 11, 1939.

That opinion, Clark, J., held that a substantial, even grave, constitutional question is present; that the fee appears to be quite disproportionate to any service rendered by the State; that the statute is, by its terms, unreasonable; and that it places a discriminatory burden on interstate commerce, but since it did not appear that the requisite three thousand dollar jurisdiction existed that the action be dismissed—and it was dismissed from the United States District Court.

The plaintiffs seek to have the enforcement of the act enjoined and to have the act declared void because:

(a) The imposition of said alleged registration fee upon each and every used motor vehicle which shall be brought into this State for the purpose of sale or resale is in violation of the commerce clause of the Federal Constitution and is unlawful and void as a burden on, and obstruction to, interstate commerce;

(b) Said act is further in conflict with the commerce clause of the Federal Constitution in that it is an effort on the part of the defendant under said alleged law to levy a tax, excise or duty upon automobiles of a certain class, to wit, such as are imported into the State of Connecticut for sale or resale and thereby impedes, embarrasses and obstructs interstate commerce;

(c) Said act is in further violation of the Federal Constitution, to wit, article 1, section 8, in that it constitutes an unlawful discrimination against interstate commerce as compared with commerce in used motor vehicles originating within this State;

(d) Said act further discriminates against interstate commerce in automobiles, in that, while local owners generally

have the privilege of freely purchasing and selling used motor vehicles, an unreasonable registration fee is required upon motor vehicles brought into this State from other states for the purpose of sale;

(e) Said proposed act subjects automobiles brought from without the State of Connecticut into this State for sale to an onerous tax or duty solely on the basis of the origin of the automobile from without the State whereas automobiles acquired within the State are not subjected to such tax or duty;

(f) Said proposed act is in conflict with the 14th Amendment to the Constitution of the United States in that it provides for the taking of the property of the plaintiffs without due process of law;

(g) Said proposed act constitutes an unjust, arbitrary, oppressive and inequitable exercise of the police power of the State of Connecticut relating to used automobiles brought therein for sale and resale;

(h) Said proposed law is in contravention of the 14th Amendment to the Federal Constitution in that it denies to the plaintiffs the equal protection of the laws and abridges their privileges and immunities as citizens of the United States and as citizens of Connecticut.

The plaintiffs also claim that the proposed act is unreasonable in that it requires and imposes:

(a) A requirement that the proposed vendor in this State of any automobile brought into this State from another state for sale or resale, furnish to the defendant proof of title and freedom from liens upon said motor vehicle, and that due to the different regulations in different states regarding the registration of motor vehicles and the recording of transfers thereof, definite proof of title and freedom from liens, proven by record, is often impossible and therefore the requirement constitutes an unlawful burden upon interstate commerce. Such proof is not required in case of used motor cars acquired in this State;

(b) A burden upon the plaintiffs and on every used car dealer affected thereby out of all proportion to the taxes levied upon property and business in general, and subtracts for tax purposes such a large percentage of the plaintiffs' revenue as to amount to confiscation;

(c) A burden upon the plaintiffs in that it invalidates com-

mercial paper used and accepted in payment for a used motor vehicle brought to this State from another state; that it restricts the right to contract, violates the obligation of a contract, and deprives the owner of the right to secure his property by legal process, all of which is contrary to the provisions of the 14th Amendment to the Federal Constitution;

(d) In addition to the existing laws relating to the registration of motor vehicles (Cum. Supp. [1935] §545c), certain further unreasonable and discriminatory requirements providing for an additional fee of ten dollars to be paid upon a certain class of motor vehicles only, to wit, used motor vehicles brought into this State for sale, the ostensible purpose of which is to provide additional revenue to be levied only upon certain articles of commerce passing in the usual course of commerce from state to state.

The pertinent part of the act now under discussion reads as follows: "(b) Section 545c is amended by adding the following: 'Every person, who shall bring any used motor vehicle into this state, for the purpose of sale or resale, except a trade-in on a new or used motor vehicle, shall, before offering such motor vehicle for sale, and within ten days from the date of entry into the state, and, after such vehicle has passed the inspection required in this section, register separately each such used motor vehicle with the commissioner of motor vehicles. The commissioner shall require from such person a description of the make, year of model, style, motor number, condition of such used motor vehicle, together with proof of title of the vendor thereto and of freedom from liens thereon and the payment of a fee of ten dollars on each such registration, no such registration to be transferable. No action to recover any such used motor vehicle, or any part of the selling price thereof, shall be maintained in the courts of this state by any vendor of a used motor vehicle or his successors or assigns unless there has been a compliance with the provisions of this section'."

It should be observed that this amendment designates and is limited to a particular type of vehicle as follows: "any used motor vehicle [brought into this State] for the purpose of sale or resale, except a trade-in on a new or used motor vehicle."

The purpose of the act is plainly expressed. To state it simply: If a used motor vehicle, brought into this State, be "traded-in" for another used motor vehicle or for a new motor vehicle, the provisions of the amended act do not apply to it

and the owner of it is not required: (1) to pay the ten dollar registration fee; (2) to furnish proof of title and of freedom from liens.. If a used motor vehicle brought into this State is not "traded-in" for a used motor vehicle or for a new motor vehicle, then not only must the owner: (1) pay the ten dollar registration fee; and (2) furnish proof of title and of freedom from liens; but, in addition to this, unless he complies with the provisions of the amended act: (3) he is barred from any action [in the courts of this State] (a) to recover any such used motor vehicle; (b) or any part of the selling price thereof.

'The legal effect of such failure on the part of the owner of such prescribed used motor vehicle is, for all practical purposes, to automatically divest him of essential enforceable rights in property which would, otherwise, be within the enforceable and protective provisions of the law.

There is no evidence before this court which would warrant a conclusion that the ten dollar fee bears any relation to damage, cost, or injury to the highways of Connecticut because, by its terms, it would likewise affect vehicles brought in here by rail or boat, or even carried upon other vehicles and, therefore, not actually in contact with the surface of the Connecticut highways.

Nor does it appear from any evidence in the case that the ten dollar registration fee bears any relation to the cost of registration or that it bears any relation to the actual cost of inspection.

Section 545c of the 1935 Cumulative Supplement to the General Statutes, which the present section amends, provides for an inspection and provides for a payment of one dollar for that inspection.

The specific wording of section 545c "shall have passed the inspection of its safety features as required by said commis-sioner" would indicate that the inspection was intended to be a thorough one and that every phase of the inspection should be given which was in any way connected with the safety of the vehicle for use upon the highway.

This phase of the matter is definitely comprehended within the sixth and seventh lines of the amending section which provide "after such vehicle has passed the inspection required in this section."

The inspection described in the amending statute is, therefore, the same inspection which was already prescribed under the provisions of section 545c and for which a fee of one dollar was required to be paid.

It does not appear that there is anything more onerous or expensive connected with the present required inspection than there was in the previously required inspection.

Nor does it appear that the clerical task of registration, in addition to the licensing of cars and operators already required, is more expensive or complicated than it was before.

No additional appropriation has been made by the Legislature for this phase of the work and the motor vehicle commissioner had, prior to the issuance of a temporary injunction, made no arrangements for additional clerical or other assisting force in his department.

It would, therefore, appear that the fee of ten dollars required by this act has no connection with but is entirely disproportionate to any cost to the State or to the motor vehicle department which handles the matters provided for in the amendment to the act.

As stated, the amended act, and the regulations issued by the Commissioner of Motor Vehicles for its enforcement, require also "proof of title of the vendor thereto and of freedom from liens thereon."

The evidence discloses that, in many cases, it is not possible for the owner of the prescribed used motor vehicle to furnish such proof of title.

The Commissioner is merely required and authorized to require the owner of the used motor vehicle to furnish these documents to him. His office force has no additional burden in this respect. Documentary proof is not always obtainable, nor it is reasonably possible—much less expedient—to furnish real proof of the freedom from liens.

Upon the trial, one of the claims advanced was that these provisions were salutary since they were expressly designed for the protection of the buyers in Connecticut.

It would seem that buyers in Connecticut are reasonably— and pretty thoroughly—protected under the provisions of the Dyer Act, a Federal law, which makes it a Federal criminal

offense to knowingly traffic in stolen automobiles across state lines (U.S. Code, tit. 18, §408).

That this existing legislation is sufficiently protective is indicated by the failure of Congress to pass any additional legislation along that line. Matter of *Whish vs. Public Service Commission*, 240 N.Y. 677; *Robbins vs. Shelby County Taxing District*, 120 U.S. 489, 493; *Southern Ry. Co. vs. Reid*, 222 id. 424.

Since the act is to be applied only to interstate cars it would seem that the regulation should be made by the Federal Government, which has complete control over interstate legislation.

If the act were enforced, in its present form, it would deny to owners of articles of commerce originating in other states the right to compete in the markets of this State upon terms of equality with the owners of like articles within this State. That would appear to be a direct burden upon commerce among the states and therefore void. *Brimmer vs. Rebman*, 138 U.S. 78.

"A state statute which by its necessary operation directly interferes with or burdens such commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted." *Shafer vs. Farmer's Grain Co.*, 268 U.S. 189, 199.

"A State may not enforce any law, the necessary effect of which is to prevent, obstruct or burden interstate commerce." *Lacoste vs. Department of Conservation*, 263 U.S. 545, 549. See, also, *Pennsylvania vs. West Virginia*, 262 id. 553.

It should be observed that the defendant has issued rules for the enforcement of the statute in question, one of which reads as follows: "The continuity of ownership must be indicated from official files, that is from the files of the registration bureau, county or city clerk, or whatever governmental agency has the information.

"Freedom from all liens must be shown likewise. Complete certification that, as the car passed from hand to hand during its lifetime, all commitments, mortgages, liens and so forth were cleared up is required. Unless the department is completely satisfied that the proof of ownership is valid and that the vehicle is absolutely free from all encumbrances, registration will be refused."

The wording of these regulations indicates that the defend-

ant, in the attempted performance of the new duties thus cast upon him, speedily and specifically undertook to inform all interested parties of the requirements of the new amendments.

If this regulation, which it is the avowed intention of the Commissioner to enforce, were actually enforced, it would, from the practical standpoint, practically bar all traffic in used cars which are within the purview of this section.

The furnishing of the requisite documents would depend upon the requirement that the documents be in existence and the evidence offered in this case shows that, in many states, and, in fact, in most of the states, no such recordation or even existence of such written instruments is required.

It is urged, on behalf of the defendant, that the State may be permitted to require such a payment—that is the fee of ten dollars—upon the view that the article used in interstate commerce has "come to rest" within the State of Connecticut and is therefore subject to the levy of such claimed fees.

Passing over any determination as to whether the ten dollars so required to be exacted is a fee or a tax, nevertheless it would appear that, even though the vehicle had "come to rest" in Connecticut, such fee, if it be termed such, exacted under the prescribed conditions, would be an unfair discrimination against vehicles imported into the State of Connecticut.

"Granting that in the exercise of its police power a state may pass inspection and license laws in proper self-protection and charge reasonable fees to meet the expense of administering the laws, the power is under the restraint that its exercise shall not operate to control or regulate foreign or interstate commerce, except as it may be incidentally affected in common treatment with local commerce." Opinion of Justices, 87 N.H. 496, 498.

"Direct regulation of interstate carriage as such, including regulation of the persons carrying and their vehicles, is vested in the federal government. A general police power and a general taxing power is reserved to the state government, and these may usually be exercised without excepting persons and instrumentalities engaged in interstate commerce, provided there is no discrimination against interstate commerce, and provided no direct and unreasonable burden is put upon it." *Johnson Transfer & Freight Lines vs. Perry*, 47 F. (2d) 900, 901.

"But the state cannot, even in the exercise of its police power, discriminate against interstate commerce. . . . The vital question in this case is, therefore, not whether this law is within the police powers of the state, but, admitting it to be so, whether it unlawfully discriminates against an article of inter state commerce manufactured without the state." *Minneapolis Brewing Co. vs. M'Gillivray*, 104 Fed. 258, 266.

Commerce among the states is not free whenever a com modity is, by reason of its foreign origin, subjected by State legislation to discriminating regulations or burdens. *Webber vs. Virginia*, 103 U.S. 344; *Voight vs. Wright*, 141, id. 62; *International Textbook Co. vs. Pigg*, 217 U.S. 91, 112.

And if interstate commerce in used motor vehicles raises opportunity for fraud by the very fact that the sales are in interstate commerce, then the remedy does not lie in local discriminatory regulations but in Congressional action and supervision.

"The decisions also show that a State cannot avoid the oper ation of this rule by simply invoking the convenient apologetics of the police power. It repeatedly has been said or implied that a direct interference with commerce among the States could not be justified in this way." *Kansas City So. Ry. Co. vs. Kaw Valley Dist.*, 233 U.S. 75, 79.

The equal protection of the laws means subjection to equal laws, applying alike to all in the same situation. While reason able classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction bearing a reasonable and just relation to the thing in respect to which such classifica tion is imposed. *Southern Ry Co. vs. Greene*, 216 U.S. 400; *Darnell & Son Co. vs. Memphis*, 208 id. 113; *Continental Bak ing Co. vs. Woodring*, 286 id. 352.

The "suppression of competition may be as effective through the exercise of the police power as through the exercise of the taxing power. Both may result in the unlawful erection of barriers between the states. Both may as effectively enthrone that arbitrariness which is a denial of the due process and the equal protection of laws guaranteed by the Fourteenth Amend ment." *Asher vs. Ingels*, 13 F. Supp. 654, 660 *See, also, Buck vs. Kuykendall*, 267 U.S. 307.

An act of Minnesota was held unconstitutional because it

forbade importation of any brand of liquor unless registered in the United States Patent Office, while a domestic manufacturer or seller could sell his liquor irrespective of whether his brands were registered. *Triner Corp. vs. Arundel*, 11 F. Supp. 145. This case was cited with approval in *Young's Market Co. vs. State Board of Equalization*, 12 F. Supp. 140.

In another case a bond was required to prevent the dealers in foreign trees from selling their wares in a certain state, ostensibly, upon the theory of preventing fraud. With reference to that it was said: "It is said that the bond required here is to prevent the dealers in foreign trees from perpetrating fraud in their sales, and that it is competent for the state to protect its citizens against the fraudulent representations of such dealers. The answer is that when a state undertakes, by statutory regulation, to deprive citizens of other states, who deal in sound articles of commerce produced in other states, of that presumption of honesty and innocence of wrong which it indulges in favor of the dealers in its own products, and which the law raises in favor of every man, it very effectually deprives the citizens of other states of the most valuable privileges and immunities its own citizens enjoy." *In re Schechter*, 63 Fed. 695, 697.

The question, therefore, is the propriety of the classification based solely on the difference in origin. It might reasonably be asked, what inherent difference exists between a used car imported here for resale and a used car whose immediate origin is within the state?

It may not be reasonably claimed that one is more dangerous to the health, morals or safety of the people than the other.

The main claim seems to be that the purchaser of an imported used automobile is more likely to be damaged by acquiring a faulty title than the purchaser of an automobile the immediate origin of which is within this State.

This does not follow, necessarily or otherwise, for under the Connecticut law the vendor of personalty impliedly warrants the title.

That the act is unreasonably discriminatory further appears in the exemption given to used automobiles which are imported and then "traded-in" for other used or new automobiles.

It would seem that the only reasonable explanation of this

provision and of this distinction is that the act is designed to protect new car dealers in their used car departments from competition with those operating a strictly used car business who vend foreign used cars.

During the presentation of the evidence witnesses were produced who testified to the circumstances surrounding the enactment of this act and, in fact, some of their speeches and remarks made at the presentation of and vote upon the act were introduced into the evidence.

All of this evidence was offered, ostensibly, upon the theory that the act is ambiguous and that the purpose of the offer and introduction of this evidence was to explain the ambiguity.

Upon the trial it was left that way and it was distinctly understood that such evidence was to be offered and was to be considered and applied by the trial court only in the event that, upon consideration and inspection of the act, it appeared that there was an ambiguity which required explanation.

A reading of the act shows that it is in no way ambiguous and that it is clear and specifically stated and worded.

Under these circumstances, all of the evidence offered in connection with a showing as to the proceedings which surrounded the passage of the act—and its purpose—is stricken from the record and it is disregarded in this decision.

The plaintiffs have the burden of sustaining the proof of all of the allegations of their complaint and of showing that the act is, by a liberal construction and fair interpretation of it, in violation of the constitutional principles invoked and that it is arbitrary and oppressive and discriminatory.

The evidence sustains these claims and it is so found.

If the act were enforced, in accordance with its plain terms, and the prescribed class of vehicles were subject to the payment of the fee of ten dollars, then dealers in used cars who buy them anywhere out of the State of Connecticut and bring them into Connecticut for purposes of resale, as distinguished from using them for purposes of trading in for new or other used vehicles, would be at a great disadvantage and, in many cases, would be practically driven out of business and barred from engaging or continuing in such an enterprise.

The evidence also discloses that the enforcement would work a hardship in another way.

The dealers in new cars in the State of Connecticut, who accept used vehicles in trade for the sale of the new vehicles, invariably, and as a rule, refuse to sell any saleable used car so "traded-in" to any dealer of used cars in the State of Connecticut. In fact, the custom, as indicated by the evidence, is that the dealers in new cars sell the used cars which are traded in to them for the new cars to dealers in other states and that Connecticut dealers in used cars, in many instances, are required to go out of the State to buy the very used cars which have been sold to the out-of-the-state dealers in used cars by the dealers in new cars in Connecticut.

Such a situation places an inequitable burden upon these dealers.

Upon the trial counsel for the defendant urged that the ten dollar payment may not be construed as a tax but that it must be construed as a fee.

If it were construed to be a tax its imposition could not legally be defended or constitutionally justified.

It is urged, on behalf of the defendant, that an injunction will not issue to restrain the collection of public taxes.

The answer to this claim is that the ten dollar payment does not purport to be a tax but that it is distinctly claimed to be a fee designed to defray the cost and expense of additionally imposed duties.

In the plaintiffs' prayer for relief asking that an injunction issue, we find the following language: The plaintiffs claim an injunction restraining and enjoining the defendant from enforcing or attempting to enforce the provisions of the aforesaid act in so far as it applies to the collection of a ten dollar registration fee on all used automobiles brought into this State for sale (and which used cars are not "traded-in" for used cars or for any cars) from requiring proof of clear title and freedom from liens upon such used motor vehicles, or from denying to the owner of any such vehicle the right to recover possession of the same or the right to collect notes accepted in the sale of any such motor vehicle.

In asking for an injunction restraining the defendant from "denying to the owner of any such vehicle the right to recover possession of the same or the right to collect notes accepted in the sale of any such motor vehicle", the plaintiffs ask this court

to attempt to bind all the courts of this State before whom a case might come respecting a question arising under the act relative to repossessing a car or suing on notes taken in the sale of a car. No such injunction may issue.

It appears upon the face of all of these pleadings, that the Motor Vehicle Commissioner, who is the defendant, would have no jurisdiction in reference to the precise matter involved in this phase of the case.

A decree may be entered that the defendant, in his official capacity as Commissioner of Motor Vehicles, be and he is permanently enjoined from enforcing those provisions of section 482e, subdivision (b), of the 1939 Supplement to the General Statutes, which require from every person who shall bring any used motor vehicle into this State for the purpose of sale or resale, except a trade-in on a new or used motor vehicle, proof of title of the vendor thereto and of freedom from liens thereon and the payment of a fee of ten dollars on each such registration.

In so far as the application prays for an injunction restraining the defendant from enforcing the remaining provisions of section 482e, subdivision (b), of the 1939 Supplement to the General Statutes, it is denied.

Decree and judgment may enter accordingly.